OPINION
Defendant-appellant, Misty A. Brown, appeals her conviction from the Madison County Municipal Court for driving under the influence of alcohol in violation of R.C. 4511.19(A)(3).[1]
Specifically, appellant challenges whether the calibration of the breathalyzer equipment was in substantial compliance with the applicable Ohio Department of Health ("ODOH") regulations.[2]
We affirm.
On January 7, 1997, at approximately 11:30 p.m., appellant was arrested for driving under the influence of alcohol in violation of 4511.19(A)(1).[3] At 12:09 a.m., on January 8, 1997, appellant submitted to a breathalyzer test. The test was conducted by Trooper Daniel A. Finnell of the Ohio Highway Patrol using a BAC datamaster machine. Appellant registered .150 grams of alcohol per two hundred ten liters of breath and was cited for violating R.C. 4511.19(A)(3).
On February 6, 1997, appellant moved to suppress the results of the breathalyzer test. On April 1, 1997, a hearing was held on the motion to suppress and the court overruled the motion in a bench ruling. A June 5, 1997 judgment entry indicates appellant pled no contest and was found guilty of driving under the influence of alcohol in violation of 4511.19(A)(3). The state dismissed the other charges. Appellant filed a timely notice of appeal and presents two assignments of error for our review:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED, TO THE PREJUDICE OF APPELLANT-DEFENDANT, IN OVERRULING HER MOTION TO SUPPRESS THE RESULTS OF HER CHEMICAL BREATH TEST IN THAT THE STATE FAILED TO PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT THE ALCOHOL TEST WAS TAKEN BY A QUALIFIED INDIVIDUAL.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED, TO THE PREJUDICE OF APPELLANT-DEFENDANT[,] IN OVERRULING HER MOTION TO SUPPRESS THE RESULTS OF HER CHEMICAL BREATH TEST IN THAT THE STATE FAILED TO PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT THE STATE WAS IN SUBSTANTIAL COMPLIANCE WITH THE OHIO DEPARTMENT GUIDELINES UNDER R.C. CHAPTER 3701[.]
 We initially note that a defendant who does not challenge the admissibility of the chemical test results through a pretrial motion to suppress waives the requirement on the state to lay a foundation for the admissibility of the test results at trial. The chemical test is admissible at trial without the state's demonstrating * * * that the bodily substance was analyzed in accordance with the methods approved by the Department of Health and that the analysis was conducted by a qualified individual holding a permit * * *.
State v. French (1995), 72 Ohio St.3d 446, 451-52. When a defendant files a motion to suppress, the state is required to demonstrate substantial compliance with ODOH regulations. State v. Plummer (1986), 22 Ohio St.3d 292, 294; State v. Finn (Oct. 31, 1988), Butler App. No. CA88-03-030, unreported, at 4. Absent a showing of prejudice by the defendant, strict or technical compliance with these regulations is not required. Id. at 295.
In her first assignment of error, appellant asserts that the state failed to prove the officer responsible for the calibration of the breathalyzer equipment was a senior operator. See Ohio Adm. Code 3701-53-07(C). If the state cannot prove the officer who calibrated the breathalyzer equipment is a senior operator, the results of the breathalyzer test must be suppressed. State v. DiMaggio (Apr. 29, 1987), Hamilton App. No. C-860-437, unreported, at 2.
In this case, Sergeant Dan Green of the Ohio Highway Patrol conducted the calibration. He testified that he was a qualified senior operator. Although this testimony is undisputed, appellant argues that the state must admit the actual senior operator's license. We disagree. The key question is whether Green had the status of a senior operator, not whether the state admitted the operator's license. State v. Adams (Oct. 17, 1995), Pickaway App. No. 94CA21, unreported, at 4. Accordingly, the first assignment of error is overruled.
In the second assignment of error, appellant challenges whether the calibration process was completed in substantial compliance with ODOH regulations. See Plummer, 22 Ohio St.3d at 294. Appellant argues that the state failed to (1) admit the calibration checklist into evidence; (2) prove the calibration solution was not used more than three months after its first use; (3) was properly refrigerated; and (4) was authenticated by ODOH. We address each argument separately.
Ohio Adm. Code 3701-53-04 provides in pertinent part that:
 (A) Approved evidential breath testing instruments shall be checked for calibration no less frequently than once every seven days by a senior operator using a solution of ethyl alcohol approved by the department of health and using the calibration checklist for the instrument being checked * * *.
 (1) A calibration check of a breath testing instrument is valid when the result of the calibration check is at target value plus or minus five one-thousandths (0.005) grams per two hundred ten liters. The results of the calibration check shall be recorded on the calibration checklist. A calibration solution shall not be used more than three months after its date of first use. The date of first use for the calibration solution and its identification data shall be recorded on the calibration checklist used for that calibration check.
* * *
 (4) Calibration solutions shall be stored in the container in which the solutions were placed by their manufacturer and shall be kept under refrigeration after first use, when not being used.
Green testified that he followed the calibration checklist for the breathalyzer equipment and concluded the equipment was in proper order. Green stated the calibrations were done on January 6, 1997 and January 13, 1997, satisfying the requirement that a calibration occur at least once every seven days. Ohio Adm. Code3701-53-04(A). Also, the results of both calibrations were within the required range of +/- .005 grams of the "target value" for the calibration solution. Ohio Adm. Code 3701-53-04(A)(1). Another regulation states that a calibration solution cannot be used more than three months after its first use. Id. Green's undisputed testimony is that the solution's first use was on October 29, 1996 and the solution was discarded on January 29, 1997, satisfying the regulation.
On cross-examination, appellant never questioned Green about any specific deviations from the calibration checklist. However, appellant insists that the state is required to admit the actual calibration checklist at the motion to suppress. The case appellant cites, State v. Kauffman (1995), 106 Ohio App.3d 831, does not stand for that principle. In Kauffman, this court overruled a R.C. 4511.19(A)(3) conviction because the calibration checklist was improperly completed. Id. Therefore, the record demonstrated that the breathalyzer test was not conducted in substantial compliance with ODOH regulations. Id. By contrast, Green testified that he followed the mandates of the calibration checklist. Since appellant cannot point to any example where Green deviated from the checklist, Green's testimony satisfies substantial compliance with ODOH regulations.
Next, appellant argues that the state did not substantially comply with the requirement that the calibration solution be refrigerated after its first use. The relevant ODOH regulation provides that "[c]alibration solutions shall be stored in the container in which the solutions were placed by their manufacturer and shall be kept under refrigeration after first use, when not being used." Ohio Adm. Code 3701-53-04(A)(4). Green testified the calibration solution was kept refrigerated, but was not aware of the exact temperature of the refrigerator. Therefore, appellant argues that the refrigerator may not have been working. Ohio Adm. Code 3701-53-05(F) requires refrigeration at forty-two degrees or below, but only for blood and urine samples.[4] State v. Kopatz (Mar. 11, 1991), Stark App. No. CA8923, unreported, at 4. It is the role of the ODOH, not this court, to create new regulations. Id. Since the record does not indicate any evidence of a mechanical problem with the refrigerator, we find Green's testimony sufficient to substantially comply with Ohio Adm. Code 3701-53-04(A)(4).
Finally, appellant argues that the state did not prove that the calibration solution used by Green was approved by ODOH. The state admitted a duplicate of the certified copy of the certificate of authentication issued by ODOH. Appellant argues that the state is required to admit a certified copy of the certificate. Evid. R. 1003 provides that: "[a] duplicate is admissible to the same extent as the original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Since appellant never raised any question as to the authenticity of the original and we perceive no unfair prejudice to appellant, a duplicate of the certified copy of the authentication certificate was properly admitted by the trial court. Id.; State v. Easter (1991), 75 Ohio App.3d 22,27-28. The second assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.
[1] The statute states that "[n]o person shall operate any vehicle, streetcar, or trackless trolley within this state, if any of the following apply: The person has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath." Appellant was also cited for speeding and crossing the center lane line.
[2] Ohio Adm. Code Chapter 3701-53 was revised effective July 7, 1997. However, we refer to the former version in effect at the time of appellant's arrest. See State v. Williams (Apr. 7, 1998), Franklin App. No. 97APC09-1141, unreported, at 3.
[3] The statute states that "[n]o person shall operate a vehicle, streetcar or trackless trolley, if any of the following apply: The person is under the influence of alcohol * * *."
[4] Revised Ohio Adm. Code 3701-53-05(F) eliminates the refrigeration temperature requirement.