The STATE of Ohio, Appellee,

v.

EASTER, Appellant.

The STATE of Ohio, Appellee,

v.

ALEXANDER, Appellant.

[Cite as *State v. Easter* (1991), 75 Ohio App.3d 22.]

Court of Appeals of Ohio,
Ross County.

Nos. 1659 & 1687.

Decided July 19, 1991.

*William J. Corzine III*, Law Director, for appellee.

*James T. Boulger*, for appellants.

STEPHENSON, Presiding Judge.

This is a consolidated appeal from judgments entered by the Chillicothe Municipal Court finding Lester Easter and Robert Alexander, defendants below and appellants herein, guilty of operating a motor vehicle with a breath-alcohol content above that proscribed by R.C. 4511.19(A)(3).[1] Appellants' assign the following error:

"The trial court erred to the prejudice of the defendant in admitting into evidence over objection of the defendant an unauthenticated copy of a public record necessary to the establishment of the foundation for the admission into evidence of the results of breath testing which results constituted the sole evidence of an essential element of the offense."

The record reveals the following facts pertinent to this appeal. On August 1, 1989, appellant, Lester Easter, was arrested and charged with operating a motor vehicle with an alcohol content above specified limits in violation of R.C. 4511.19(A)(3). On December 14, 1989, appellant, Robert Alexander, was likewise charged with operating a motor vehicle with an alcohol content above such limits. Both appellants pleaded not guilty and the matters proceeded to their respective trials before the court.

In both trials, there was testimony from State Troopers which attempted to authenticate the respective so-called "batch and bottle affidavits" which refer to the alcohol concentration contained in the bottle of solution used in the BAC verifier. Neither trooper claimed to have personal knowledge of how, or from whom, the batch and bottle affidavit came into the possession of the local highway patrol post. Appellants' counsel objected to the admission of these items, asserting that they had not been properly authenticated pursuant to

---

1. These appeals were ordered consolidated on August 8, 1990, upon motion of appellants and under authority of App.R. 3(B). Prior to that time, however, only one brief was filed for case No. 1659 (*State v. Easter*) and none was filed for case No. 1687 (*State v. Alexander*). Inasmuch as both cases present the identical legal issue, we shall treat the error assigned as having been intended for both cases.

Evid.R. 902 and Evid.R. 1005. The trial court overruled the objections and let the affidavits into evidence. The court found both appellants guilty of operating a motor vehicle above the specified limits in violation of R.C. 4511.19(A)(3) and this appeal followed.

■ The issue posited for our review herein is whether there was sufficient evidence to authenticate and admit the batch and bottle affidavits below. This issue is critical inasmuch as such affidavits lay a foundation for showing that a person's breath was analyzed in accordance with methods approved by the Director of Health, thereby allowing the admission of breath test results into evidence. See generally, *Cincinnati v. Sand* (1975), 43 Ohio St.2d 79, 72 O.O.2d 44, 330 N.E.2d 908, paragraph two of the syllabus.

In *State v. Pariscoff* (Mar. 13, 1990), Ross App. No. 1513, unreported, 1990 WL 34122, we held that such affidavits could be properly authenticated under Evid.R. 901(B)(1) by testimony from a record keeper at the highway patrol station having personal knowledge of the document having been received and filed with the highway patrol. Moreover, we held the affidavit in that case to be admissible as a duplicate original, under Evid.R. 1001(3), because of the trial court's notation of original stamp numbers, thus indicating that the affidavit at issue therein was intended as an original.

In the cases before us, however, appellants argue that our holding in *Pariscoff* will not sustain the admissibility of the affidavits below because neither patrolman in these cases testified to having personal knowledge of the receipt of these affidavits. Having reviewed the transcripts in both of these cases, we agree that, to the extent no such testimony appears in either case, *Pariscoff* is distinguished on its facts. It does not follow, however, that these documents are automatically deemed inadmissible.

It was clearly suggested in *Pariscoff* that, notwithstanding the holding in that case, there are methods to authenticate these items other than eliciting testimony from a state trooper with personal knowledge of their receipt. See *Pariscoff* (Harsha, J. concurring). The provisions of Evid.R. 901(A) require only that a proponent of a document produce "evidence *sufficient to support a finding* that the matter in question" is what the proponent claims it to be. (Emphasis added.) This low threshold standard does not require *conclusive* proof of authenticity, but only sufficient foundational evidence for the trier of fact to conclude that the document is what its proponent claims it to be. 1 Weissenberger, Ohio Evidence (1991) 4–5, Section 901.2; see, also, Giannelli, Ohio Evidence Manual (1990) 6, Section 901.01.

One method by which to satisfy this minimum standard is to authenticate the document through testimony of a witness "with knowledge," as provided for in Evid.R. 901(B)(1). This was the rule under which we affirmed the

judgment in *Pariscoff.* However, contrary to the arguments of the appellants herein, personal knowledge of a document's *receipt* is not the only type of knowledge which will lay a sufficient foundation to authenticate the item.

In Weissenberger, *supra,* at 10, Section 901.14, it states that "[a] writing may be authenticated under Rule 901(B)(1) by testimony of a witness with firsthand knowledge of the execution, preparation *or custody of the writing."* (Emphasis added.) In the cases before us, Trooper Shasteen (*State v. Easter* ) and Sgt. Turner (*State v. Alexander* ) both gave testimony to the effect that they were responsible for maintaining the records received from the Department of Health. In our opinion, this was sufficient to establish custody of those records and, thus, lay a foundation from which the trier of fact could reasonably find the batch and bottle affidavits to be authentic.

Initially, we point out that Ohio Evid.R. 901(B) closely parallels its federal counterpart, see Staff Note in 2 Blackmore & Weissenberger, Ohio Evidence (1980) 88–89, and thus federal case law provides an appropriate interpretation of this rule. To that end, we note that, under the federal rules, the ultimate question facing the trial court is whether the authentication testimony was sufficiently complete that it convinced the court of the improbability of the original item having been exchanged with another or otherwise tampered with. See *United States v. Howard–Arias* (C.A.4, 1982), 679 F.2d 363, 365–366; *United States v. Brewer* (C.A.10, 1980), 630 F.2d 795, 802. Once the trial court has answered that question, and the evidence is either admitted or excluded, the court's determination on the authentication issue is reversed only upon a showing of an abuse of discretion. See *United States v. Whitworth* (C.A.9, 1988), 856 F.2d 1268, 1283; *United States v. Spetz* (C.A.9, 1983), 721 F.2d 1457, 1476. An abuse of discretion is more than an error of law or judgment; it implies an unreasonable, arbitrary or unconscionable attitude. *State v. Moreland* (1990), 50 Ohio St.3d 58, 61, 552 N.E.2d 894, 898; *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 172, 404 N.E.2d 144, 148. In examining the transcripts of proceedings below, we can determine no such abuse of discretion.

In sum, therefore, we believe that the batch and bottle affidavits may be authenticated under Evid.R. 901(B)(1) even without evidence of personal knowledge of their receipt. Similarly, we believe the "best evidence rule" contained in Article Ten of the Rules of Evidence can be satisfied without specific recourse to Evid.R. 1001(3). Even assuming, *arguendo,* that the batch and bottle affidavits were not counterpart originals as they were in *Pariscoff,* Evid.R. 1003 allows for admission of duplicates unless there is a "genuine" question as to authenticity or its admission, in lieu of the original, would be unfair.

■ Once again, Ohio Evid.R. 1003 is the same as the federal rule, see Staff Note in 2 Blackmore & Weissenberger, *supra*, at 101, and thus we note that, at least under the pertinent federal rule, the burden is on the defendant to demonstrate a genuine issue as to the authenticity of the unintroduced original, or as to the trustworthiness of the duplicate, or as to the fairness of substituting a duplicate for the original. *United States v. Chang An–Lo* (C.A.2, 1988), 851 F.2d 547, 557. Mere speculation that the proffered document is not a proper duplicate is insufficient, *id.* at 557–558, as is a general attack on the prosecution's failure to introduce the original. *United States v. DiMatteo* (C.A.11, 1983), 716 F.2d 1361, 1368. In reviewing the transcripts below, we cannot find where appellants have raised a specific genuine challenge to those documents.

■ Moreover, as with the issue of authenticity, the decision to admit duplicates, in lieu of originals, is one that is left to the sound discretion of the trial court. *Natl. City Bank v. Fleming* (1981), 2 Ohio App.3d 50, 57, 2 OBR 57, 63, 440 N.E.2d 590, 598; see, also, *United States v. Georgalis* (C.A.5, 1980), 631 F.2d 1199, 1205–1206; *United States v. Covello* (C.A.2, 1969), 410 F.2d 536, 543. In the absence of an abuse of that discretion, and we can discern none below, we will not reverse these convictions.

Appellants urge us, however, to adopt the position taken by the Franklin County Court of Appeals in *Columbus v. Robbins* (Feb. 28, 1989), 61 Ohio App.3d 324, 572 N.E.2d 777, wherein that court held, under similar circumstances, that the affidavit failed to satisfy the requirements of Evid.R. 902(4) and 1005 and should be excluded. We decline to adopt the holding in *Robbins* because of what appear to be several weak spots in the court's reasoning. First, that court makes no consideration whatsoever as to whether these documents would otherwise be admissible under those evidence rules previously discussed in this opinion. Furthermore, it is implied that Evid.R. 902(4) and 1005 are the *only* rules under which these batch and bottle affidavits may be admitted. That proposition is soundly contradicted by a number of authorities which rely on various principles contained in Evid.R. 901 and 902 to authenticate such items. See, *e.g.*, text discussion and cases cited in Painter & Looker, Ohio Driving Under the Influence Law (2 Ed.1990) 145–147, Section T 13.04.

■ Moreover, we are not entirely persuaded by that court's conclusion that Ohio Adm.Code 3701–53–04 *requires* the state to produce a certified document at trial showing that the calibration solution was correct. This regulation, in pertinent part, *requires* only the following:

"(A) Breath testing instruments must be checked for calibration no less frequently than once every seven days by a senior operator using a solution of ethyl alcohol approved by the director of health * * *.

"(1) A calibration check of a breath testing instrument is valid when the result of the calibration check is at target value plus or minus five one-thousandths (0.005) grams per two hundred ten liters. The results of a calibration check shall be recorded on a calibration checklist. A calibration solution shall not be used more than three months after its date of first use. The date of first use for the calibration solution and its identification data shall be recorded on the calibration checklist used for that calibration check[.]"

Quite obviously, this regulation affects only the method of testing the equipment and does not impose any new evidentiary standards for showing that such tests have been complied with. That is a matter for determination under general evidence principles and, therefore, we do not agree that this regulation mandates that a certified batch and bottle affidavit with original signature must be submitted.

For these reasons, we find appellants' assignment of error to be without merit and the same is overruled. The judgments of the trial court are affirmed.

*Judgments affirmed.*

HARSHA, J., concurs.

GREY, J., dissents.

GREY, Judge, dissenting.

I respectfully dissent.

These two cases deal with the proper certification of the calibration tests of intoxilyzers. I agree that under the Rules of Evidence there probably is enough to establish the authenticity of the test and the certificates. However, I think the real issue is whether they can be authenticated by any other way than that which is established by the Department of Health. Since the legislature has adopted this method of testing and has given the Department of Health the authority to set the standards, we ought not to change what they have decided is to be done. The department could have adopted other regulations to ensure the accuracy of the breath tests or used other certification standards, but it didn't.

The presumption created under R.C. 4511.19 arises only if the test is given in accordance with the department regulations. If they are not in accordance, there is no presumption.

I urge this court to adopt the reasoning of the Tenth District Court of Appeals in *Columbus v. Robbins* (1989), 61 Ohio App.3d 324, 572 N.E.2d 777.

The Tenth District was presented with the issue facing this court both in *Pariscoff* and in these cases on appeal. In *Robbins*, the Tenth District Court of Appeals held:

"Pursuant to Ohio Administrative Code 3701–53–04, the Ohio Department of Health (ODH) must produce a document certifying that the solution used to calibrate a BAC verifier was proper. The document admitted at trial was not certified by ODH but was only a copy of an uncertified ODH document maintained in the police files. While the document in question was attested by Sgt. K.R. Bell as the keeper of the calibration log book for that particular machine, it was not certified by ODH as mandated by Evidence Rule 1005 and 902. The fact that the uncertified document was sent to another agency who could certify that it was part of its official file does not eliminate the deficiency. Hence, the document does not comply with the requirements of Ohio Administrative Code 3701–53–04.

"Without a properly authenticated calibration solution certificate, the results of the defendant's BAC verifier test can not be admitted. See *State v. Ward* (1984), 15 O.S.3d 355 [15 OBR 477, 474 N.E.2d 300]. In order for a breath analysis to be admitted it must be shown that the procedures prescribed by the Department of Health, pursuant to Revised Code 3701.143, have been precisely followed. *Cincinnati v. Sand* (1975), 43 O.S.[Ohio St.]2d 79 [72 O.O.2d 44, 330 N.E.2d 908]. One such procedure is that the machine is properly calibrated. Ohio Administrative Code 3701–53–04. Without evidence of calibration, the BAC verifier results must be excluded."

I find the facts in *Robbins* to be on "all fours" with the facts here, and find the reasoning of the Tenth District to be most persuasive.

One point that should be mentioned is that we are undercutting the Department of Health by not enforcing its regulations. If police agencies do not follow the prescribed routine, but we let the evidence in anyway, how can the Department of Health see that its regulations are obeyed or that the tests are properly administered?

One other point that should be made is that this court is climbing onto an endless treadmill of cases. The Tenth District takes a far more sensible and efficient approach when it says: Do it right or not at all. I anticipate that the police officers in the Tenth District will learn from their mistakes, and noncompliance with the regulations will disappear in a short period of time.

But here in the Fourth District, as long as these tests are given without showing, as mentioned in *Robbins, supra*, that the regulations were precisely

**30**

followed, there will continue to be appeals over deviations from the regulations. This court will continue to construe and reconstrue the regulations in terms of the facts in each deviation in case after case after case. And since the police officers are not likely to learn from their mistakes, the mistakes are likely to go uncorrected.

I will get off that treadmill now.

Thus, I dissent.