While serving as Scioto Township administrator, appellant Mark E. Bragg used a business credit card to amass over $6,000 worth of personal purchases for which the township was charged. Mr. Bragg appeals his conviction for theft in office, assigning three errors for our review:[1]
 I. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT ALLOWED THE STATE TO CALL TIMOTHY WAYNE DETWILLER TO TESTIFY AS AN EXPERT WITNESS.
 II. THE TRIAL COURT ERRED IN ADMITTING COPIES OF DOCUMENTS, CREDIT CARD STATEMENTS AND CHECKS, WITHOUT HAVING THE STATE EXPLAIN WHY THE ORIGINALS WERE NOT AVAILABLE, IN VIOLATION OF EVID.R. 1003.
 III. THE VERDICT OF THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Finding none of the assignments meritorious, we affirm the appellant's conviction.
 I.
The appellant worked for the Scioto Township trustees as an appointed township administrator from 1994 until February 1997. As administrator, the appellant assisted the Scioto Township clerk in organizing bills and writing checks to pay township expenses. The appellant was also responsible for overseeing a renovation of the Scioto Township Hall during his tenure. His duties included purchasing building materials for the renovation project.
In December 1994, the Scioto Township trustees opened a credit card account with the Huntington National Bank to facilitate the payment of township-related business expenses. Huntington National Bank issued credit cards to the each of the township trustees, the township clerk and the appellant. The terms of the credit card agreement stated the credit cards "shall be used only for business purposes and not for nonbusiness purposes of any Employee or anyone else." The terms of the township's credit card account also obligated the township to pay the full balance of their credit card statements each month. The Huntington National Bank later changed this policy in approximately December 1995, allowing the township to maintain a "revolving" credit card account, i.e. an account that did not need to paid in full at the end of each month.
The township clerk and the appellant were responsible for collecting the statements from the cardholders each month, adding the statements, and issuing a "warrant" for the payment of the township's total credit card bill. A "warrant" consisted of a check, which was attached to a brief description of the expense for which the check was issued. The warrants were presented to the township trustees for signature at their biweekly meetings. The township's procedure also required the credit card statements and any supporting invoices to be attached to the warrants for the trustees' review. By the trustees' admission, however, this process did not always run strictly according to procedure due to the hectic nature of the trustees' meetings. At each meeting, the trustees were faced with numerous checks and documents to sign, as well as other township business to which they devoted attention. Thus, in reality, the trustees rarely had an adequate amount of time to review each credit card statement before they signed the warrants authorizing payment for the total credit card bill.
From January 1995 through February 1996, the appellant utilized his township credit card extensively. In addition to using the card for township business, the appellant made numerous charges for personal items, including purchases of jewelry, clothing, shoes, and sporting goods. The appellant also utilized the township's credit card for skiing outings in West Virginia and Ohio. On only one occasion in 1995, a $103.96 purchase from a sporting goods store, did the appellant pay for a personal expense charged on the township's credit card. During all of 1995, however, the trustees signed each warrant authorizing payment for the township's credit card bills, including the amounts charged by the appellant for personal expenses. While the credit card statements recorded each expense the appellant made, the warrants signed by the trustees did not reflect that payment was being made for non-township related expenditures.
In January 1996, Scott Griesheimer became a Scioto Township trustee, replacing his predecessor. Two months later, Mr. Griesheimer was reviewing the township's credit card statements when he noticed a transaction of $125.50 at Mad River Mountain Ski Resort in Zanesfield appearing on the appellant's charges. Feeling this was not a township-related business expense, Mr. Griesheimer and the other trustees did not sign the warrant accompanying this credit card statement. Mr. Griesheimer asked the appellant about the transaction and the appellant admitted it was a personal charge. The appellant returned the statement to the trustees, with the Mad River Mountain transaction highlighted; according to Mr. Griesheimer the transaction had not been highlighted the first time he saw the statement. The appellant told Mr. Griesheimer that the warrant paying that month's credit card bill did not include an amount for his Mad River Mountain expense.
Following this incident with the appellant, Mr. Griesheimer and another trustee obtained all of the township's credit card statements from 1995. Upon review, the trustees noticed other charges that did not appear related to township business. The township canceled all of its credit cards in May 1996 and requested that the State Auditor's Office perform a "special audit" of the township's credit card expenses from 1995 until closure of the account. Tim Detwiller, a deputy auditor with the State Auditor's Office, conducted the special audit according to general procedures governing special audits and other procedures agreed upon by the township trustees. These "agreed-upon procedures" consisted of Mr. Detwiller's review of the township's credit card statements and any supporting documentation reflecting the credit card charges. Mr. Detwiller was to determine whether there were "questionable" charges made on the township's credit card account, i.e. transactions lacking supporting documentation and/or for non-township business. After a nine-month audit, Mr. Detwiller concluded that the appellant had totaled $6,248.48 in charges deemed "unsupported" or "questioned." After Mr. Detwiller's audit was completed, the appellant gave one of the trustees a money order for $2399.79 to cover his personal charges. The appellant had earlier paid $1,600, in various installments, directly to Huntington Bank. The appellant's payments to Huntington Bank covered the balance that remained outstanding on his township credit card when the township trustees closed the account.
In April 1997, the Ross County Grand Jury indicted the appellant on a single count of Theft In Office, in violation of R.C. 2921.41. At trial, the appellant objected to the testimony of Mr. Detwiller on the basis that his testimony did not satisfy the requirements for expert testimony under Evid.R. 702. The appellant contended that Mr. Detwiller's audit was not performed within generally accepted accounting procedures, that he merely followed the procedures agreed upon by the township trustees, and that a special audit "cannot form an opinion." Mr. Detwiller admitted that his audit did not follow all generally accepted accounting procedures required of "regular audits," but noted that "special audits" differed in both procedure and scope from regular audits. While the function of a regular audit is to generate an opinion concerning the accuracy of the audited entity's financial statements, a special audit's function is to render findings regarding a specific factual inquiry. In this case, Mr. Detwiller testified that he followed procedures attendant to "special audits" to inquire into the limited question of whether questionable purchases were made with the township's credit card. The court overruled the appellant's objection and allowed Mr. Detwiller to testify concerning the results of his special audit.
The court also overruled other evidentiary objections made by the appellant. The state introduced copies of various township credit card statements from 1995 and 1996 that reflected each purchase the appellant had made with his township credit card. The appellant, invoking the best evidence rule, insisted that the originals were required, as the appellant had allegedly highlighted his various personal expenses because he intended to pay them back. None of copies introduced by the state, except for one, evidenced highlighting or writing of any kind on the appellant's statements. The court overruled the appellant's objection and allowed the state to admit all forty-four of the disputed exhibits.
In addition to Mr. Detwiller and Mr. Griesheimer called two officials from Huntington Bank as witnesses. Both of the bank witnesses testified that the township's credit card agreement prohibited cardholders from using the credit cards for non-township purposes. The bank witnesses also testified that there were no special arrangements made with the appellant to allow him to use his township credit card for personal transactions. The state also called the current and former trustees as witnesses. None of these witnesses testified that he had consented to the appellant's use of the township credit card for personal purposes. All admitted that the trustees were supposed to look at the statements and invoices before signing the warrants. However, there was no testimony that any trustee was aware that the warrants they signed contained personal expenses of the appellant.
The appellant testified on his own behalf. The appellant admitted to having used the township credit card to make personal purchases and acknowledged that he did not pay for any of these expenses (except for a single $103.96 purchase) for over one year. However, the appellant maintained that he had highlighted each personal expense on his credit card statement, with intent to reimburse the township, and that the trustees knew of his use of the credit card for personal purchases. The appellant also testified that many of the "questioned" charges were actually for township-related business. The appellant maintained that he never hid the nature of his expenses from the township trustees and that he had paid either the township or Huntington Bank for his personal charges as of March 1997.
The jury found the appellant guilty of theft in office, a third-degree felony. The trial court sentenced the appellant to one year in the Ohio Correctional Reception Center plus any restitution found to be owing to the township. The appellant commenced this appeal.
 II.
In his first assignment of error, the appellant attacks Mr. Detwiller's testimony concerning the audit he performed for the township. During trial, the state conceded that Mr. Detwiller's testimony was governed by the evidentiary rules concerning expert testimony. The appellant contends that Mr. Detwiller's testimony was subject to the requirements of Evid.R. 702. The appellant insists that the trial court erred in admitting Mr. Detwiller's testimony because the testimony failed to satisfy the rule's essential requirements. We disagree with the appellant.
Evid.R. 702 states:
 A witness may testify as an expert if all of the following apply:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 (2) The design of the procedure, test, or experiment reliably implements the theory;
 (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.
A trial court possesses considerable discretion in deciding the competency of an expert and the admissibility of expert testimony. See Nichols v. Hanzel (1996), 110 Ohio App.3d 591,597, discretionary appeal not allowed (1996), 76 Ohio St.3d 1496
(regarding competency); Colboch v. Uniroyal Tire Co., Inc.
(1996), 108 Ohio App.3d 448, 461 (admissibility). The trial court's discretion is guided by the requirements of Evid.R. 702, which must be satisfied before an expert's testimony is admissible. See Giannelli Snyder, Rules of Evidence Handbook (1999) 229, Evid.R. 702 Commentary (noting that Evid.R. 702 provides "further guidance concerning the admissibility of expert testimony"). A trial court's determination regarding the competency of an expert and the admissibility of expert testimony will not be reversed absent an abuse of discretion.Nichols, 110 Ohio App.3d at 597; Colboch,108 Ohio App.3d at 461. An abuse of discretion connotes an attitude on the part of the court that is unreasonable, arbitrary, or unconscionable.Nichols, 110 Ohio App.3d at 597 (citing Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219). In applying the abuse of discretion standard, a reviewing court must not substitute its judgment for that of the trial court. Berk v. Matthews (1990),53 Ohio St.3d 161, 169. The fact that a reviewing court might have arrived at a different conclusion is immaterial, so long as the trial court was guided by the correct criteria in making its decision. See Lorain City Bd. of Edn. v. State Emp.Relations Bd. (1988), 40 Ohio St.3d 257, 261.
The appellant first challenges Mr. Detwiller's qualification to present expert testimony during trial. Before an expert may testify, "it must appear that the expert has an opinion of his or her own or is able to form one upon the matter in question."Nichols, supra, 110 Ohio App.3d at 597 (citing State Auto Mut.Ins. Co. v. Chrysler Corp. (1973), 36 Ohio St.2d 151, 160). The appellant argues that Mr. Detwiller should not have been allowed to testify because he was unable to render an opinion as to whether the appellant improperly used the township credit card. Because he could not render an opinion on this material question, the appellant contends that the trial court should not have allowed Mr. Detwiller to testify. The appellant is incorrect.
The appellant seizes upon the fact that Mr. Detwiller performed a "special audit," as opposed to a "regular audit," of the township. Mr. Detwiller admitted that a special audit does not render an opinion regarding the accuracy of a particular agency's financial statements. Rather, the function of a special audit is to perform procedures agreed upon by the auditor and the agency in order to render special "findings,"e.g. whether money is missing, stolen, or otherwise unaccounted for. In this case, the fact that Mr. Detwiller did not render an "opinion" on the township's financial statements as a whole did not make his testimony inadmissible. Mr. Detwiller rendered an opinion as to the questionable nature of certain purchases appearing on the township's credit card statements over a one-year period. The presence of questionable purchases by the appellant was a matter in question during trial, as it was part of the ultimate determination of whether the appellant improperly used the township's credit card. Thus, Mr. Detwiller rendered an opinion relating to a matter in question.
The appellant also questions whether Mr. Detwiller's testimony satisfied the requirements of Evid.R. 702(A). The appellant contends that Mr. Detwiller's testimony consisted mainly of his reading of credit card statements and telling the jury what the appellant's personal purchases were. Therefore, the appellant insists that the appellant did not testify to anything that was "beyond the knowledge and experience possessed by laypersons." See State v. Koss (1990), 49 Ohio St.3d 213,216 (expert testimony inadmissible "when such knowledge is within the ken of the jury"). We disagree.
The appellant's argument oversimplifies the nature of Mr. Detwiller's testimony. While Mr. Detwiller testified at length regarding the content of the township's credit card statements and the amounts charged by the appellant, his testimony was not limited to a recitation of this information. Mr. Detwiller also offered testimony regarding the "questionable" nature of the appellant's expenses. The business-related expenditures of a township are not necessarily within the ken of the average person. Thus, a lay person would not ordinarily know what types of expenses were "questionable" in the context of a township. As an auditor of various political subdivisions, Mr. Detwiller was familiar with the pattern of expenditures common to a township or village. Mr. Detwiller was also familiar with the types of supporting documentation, e.g. invoices from township suppliers, that are necessary in the ordinary course of township business to properly account for business-related expenditures. We find no abuse of discretion in the trial court's decision to admit expert testimony on these subjects from Mr. Detwiller.
Finally, the appellant charges that Mr. Detwiller's testimony should not have been admitted because it failed to comport with Evid.R. 702(C). The appellant argues that the auditing procedures of Mr. Detwiller were not "objectively verifiable" or "derived from widely accepted knowledge." Evid.R. 702(C)(1). The appellant therefore contends that Mr. Detwiller's procedures were not conducted in such a way as to "yield an accurate result." Evid.R. 702(C)(3). These contentions are also meritless.
The appellant first attacks Mr. Detwiller's admission that his "special audit" of the township did not comport with generally accepted accounting standards. In making this contention, the appellant overstates Mr. Detwiller's admission by failing to appreciate the difference between a special audit and a regular audit. As noted previously, Mr. Detwiller performed only a "special audit" for the township, which was aimed at identifying questionable credit card expenditures for which the township had paid. Mr. Detwiller was not asked to perform a "regular audit" to render an opinion concerning the accuracy of the township's financial statements as a whole. Mr. Detwiller explained that an audit "in accordance with general accounting standards" means an audit that comports withall accounting standards and requires the auditor to render an opinion. Conversely, a special audit, by definition, does not comport with "generally accepted accounting standards" because it is, unlike a regular audit, limited in scope and not aimed at rendering an opinion. Instead of following general accounting standards attendant to regular audits, Mr. Detwiller performed his "special audit" in accordance with the "Statement on Auditing Standards 75" ("SAS 75"). Mr. Detwiller testified that the SAS 75, which is issued by the American Institute of Certified Public Accountants, sets forth guidelines for special audits. Thus, the type of audit Mr. Detwiller actually performed fell within the guidelines of generally accepted standards relating to special audits.
Notwithstanding Mr. Detwiller's adherence to standards pertaining to special audits, the appellant attacks the accuracy of the audit's findings. In explaining the special audit process of SAS 75, Mr. Detwiller testified that he was required to perform only those procedures that were "agreed upon" between him and the client, i.e. the township. In this case, the procedures "agreed upon" between the township and Mr. Detwiller consisted of a review of the township's credit card statements and any supporting invoices for the period of January 1995 to June 1996 to ascertain whether there were any purchases unrelated to township business. Because the special audit required Mr. Detwiller to perform only those procedures agreed upon by the township trustees, the appellant insists there was no way to verify the accuracy of his results. We disagree with this characterization of Mr. Detwiller's procedures. The township asked Mr. Detwiller to review its credit card statements and any supporting documentation for the purchases made with the township's credit cards. These documents and Mr. Detwiller's experience alone provided enough support for the trial court's conclusion that Evid.R. 702(C)(3) was satisfied. The items examined by Mr. Detwiller are virtually the only documents necessary to assess whether the appellant had made any "questionable" purchases during his tenure as township administrator. Any relevant documents that Mr. Detwiller may have overlooked would impact the weight, not the admissibility, of his testimony. If the appellant felt the items relied upon were insufficient, he had the opportunity to cross-examine Mr. Detwiller or present his own expert.
The first assignment of error is overruled.
 III.
In the second assignment of error, the appellant attacks another evidentiary ruling by the trial court. Over the appellant's objection, the trial court admitted forty-four exhibits offered by the state, consisting of the township's credit card statements and warrants for the payment of those statements. The exhibits were photocopies of the original documents. The appellant contends that the admission of the copies violated the best evidence rule because the originals were required.
Evid.R. 1002, Ohio's best evidence rule, states:
 To prove the content of a writing * * *, the original writing * * * is required, except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio.
The general rule enunciated by Evid.R. 1002 is limited by Evid.R. 1003, which governs the admissibility of duplicates. Evid.R. 1003 provides that a duplicate is admissible "to the same extent as an original" unless either: (1) a genuine question is raised as to the authenticity of the original, or (2) under the circumstances, it would be unfair to admit the duplicate in lieu of the original. See State v. Easter (1991),75 Ohio App.3d 22, 26. "A party seeking to exclude a 'duplicate' * * * pursuant to Evid.R. 1003 has the burden of demonstrating that the duplicate should not be admitted." Natl.City Bank v. Fleming (1981), 2 Ohio App.3d 50, 57. Mere speculation that the proffered duplicate is unreliable is insufficient to meet this burden. Easter, 75 Ohio App.3d at 27. Further, a general attack on the state's failure to introduce the original does not satisfy a defendant's burden under Evid.R. 1003. Id. The decision to admit a duplicate in lieu of an original is left to the sound discretion of the trial court.Id. Absent an abuse of discretion, a reviewing court will not reverse a conviction based on a trial court's decision to admit duplicates in lieu of originals. Id.; see, also, State v. Brown
(1995), 108 Ohio App.3d 489, 496-97.
In this case, the appellant argues that the original credit card statements and warrants were necessary and that the trial court should have insisted upon their production. The appellant contends that he had highlighted the original credit card statements and that this fact could have been helpful to the defense, presumably because it was probative of the appellant's intent to repay the township for any personal expenses, showing that he did not intend to deprive the township of any funds. The appellant therefore argues that there was a genuine issue of authenticity that could have substantially affected the outcome of the trial.[2]
We recognize that some support exists for the proposition that the appellant has raised a genuine issue regarding authenticity. As the Commentary to Evid.R. 1003 explains:
 * * * pursuant to Rule 1003, a party may object to the introduction of a duplicate if he raises a "genuine question * * * as to the authenticity of the original." Thus, assume that either the original or the duplicate was corrected or altered
after execution and through oversight the counterpart was not corrected. A genuine issue could be raised as to the authenticity of the original or the duplicate.
Evid.R. 1003, Staff Notes (emphasis added). Thus, when an opponent of a duplicate raises a genuine issue regarding the document's trustworthiness, the trial court may refuse to admit the duplicate. See State v. Brown, supra,108 Ohio App.3d at 496-97; see, also, United States v. Haddock (C.A.10, 1992),956 F.2d 1534, 1545-46 (proper exclusion of photocopied documents under Fed.R.Evid. 1003 when witnesses testified that the documents bore markings that did not comport with similar originals);[3] United States v. Georgalis (C.A.5, 1980),631 F.2d 1199, 1205 (noting that opponent of duplicate must show genuine issue as to "authenticity of the unintroduced original, or as to the trustworthiness of the duplicate, or as to the fairness of substituting the duplicate * * *"); Myrick v. UnitedStates (C.A.5, 1964), 332 F.2d 279, 282 (trial court properly admitted photostatic copies absent a suggestion that "the photostats offered in evidence were incorrect * * *"). Nevertheless, based on the trial record, we cannot conclude that the trial court abused its discretion in admitting the copies of the various documents at issue in this case.
The appellant insists that he has raised a genuine issue regarding the trustworthiness of the copies because the copies introduced at trial do not reflect the highlighting and initialing he made on the originals. However, the only facts offered by the appellant beyond his bare assertions of highlighting and initialing do not necessarily raise a genuine authenticity issue. The appellant points to testimony from Mr. Griesheimer that indicated his observation of highlighting onone of the original credit card statements. However, this instance of highlighting does not create a genuine issue of authenticity under Evid.R. 1003. Mr. Griesheimer testified that this particular statement was not highlighted when he first viewed it. Mr. Griesheimer observed highlighting of a personal expense the second time he saw the statement, after he had confronted the appellant about a suspicious expenditure appearing on the statement. Further, Mr. Detwiller testified that he did not note any highlighting or initialing on the original statements when he observed them. The trial court did not abuse its discretion in concluding that the appellant's purported highlighting of the original credit card statements was insufficient to raise a genuine issue regarding authenticity of the documents in question. Cf. Lakeview DairyServices, Inc. v. Dangler (1989), 65 Ohio App.3d 753, 756-57
(trial court did not abuse discretion in deciding that an objection to purported duplicate as inconsistent with misplaced original and containing alterations concerns weight rather than admissibility).
The appellant also emphasizes that the original documents were in the township's possession during at least part of the time Mr. Detwiller conducted his audit. Because of this fact, the appellant argues that the state should have been required to explain the whereabouts of the original statements. While this type of general attack on the state's failure to introduce the original documents goes to the weight or credibility of the state's case, it does not satisfy an opponent's burden to exclude the duplicate. State v. Easter, supra,75 Ohio App.3d at 27. The trial court may have reasonably concluded that the appellant's arguments concerning the missing originals, and therefore the missing "highlighting" on the statements, impacted the weight of the evidence rather than their admissibility. Finding no abuse of discretion, the second assignment of error is overruled.
 IV.
In his final assignment of error, the appellant states that his conviction is against the manifest weight of the evidence. In arguing that his conviction must be overturned, however, the appellant makes arguments to support both a manifest weight challenge and a contention that the evidence at trial was legally insufficient to sustain a conviction. The difference between a "sufficiency of the evidence" challenge and a "manifest weight of the evidence challenge" is substantial and not merely semantical. See State v. Roberts (Mar. 11, 1999), Washington App. No. 98CA21, unreported. A sufficiency of the evidence challenge tests whether the state's case is legally adequate to go to a jury, in the sense that it contains primafacie evidence of all the essential elements of a charged offense. Id.; see, also, State v. Thompkins (1997), 78 Ohio St.3d 380,386; State v. Martin (1983), 20 Ohio App.3d 172,175. A weight of the evidence argument concerns the "rational persuasiveness" of the evidence and tests whether the evidence was enough to sustain the prosecution's burden of proof.Thompkins, 78 Ohio St.3d at 387. In the interests of justice, we address both a "sufficiency of the evidence" challenge and a "manifest weight of the evidence" argument.
In determining whether sufficient evidence exists to support a conviction, an appellate court must construe the evidence in a light most favorable to the prosecution. State v. Hill
(1996), 75 Ohio St.3d 195, 205; State v. Grant (1993), 67 Ohio St.3d 465,477. We consider evidence "sufficient" to support a conviction if any rational trier of fact considering the evidence could have found all essential elements proven beyond a reasonable doubt. Jackson v. Virginia (1979), 443 U.S. 307,319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573; State v. Allen
(1995), 73 Ohio St.3d 626, 630; State v. Loza (1994), 71 Ohio St.3d 61,68-69. A reviewing court will not disturb a conviction unless reasonable minds could not reach the conclusion reached by the trier of fact. State v. Getsy (1998),84 Ohio St.3d 180, 193. In making this determination, we are mindful that weight and credibility of witnesses and evidence are primarily issues for the trier of fact. Grant, 67 Ohio St. 3
d at 477; State v. DeHass (1967), 10 Ohio St.2d 230.
The appellant was convicted of theft in office. R.C.2921.41(A) sets forth the elements of this offense:
 (A) No public official * * * shall commit any theft offense, as defined in [R.C. 2913.01(K)], when either of the following applies:
 (1) The offender uses the offender's office in aid of committing the offense or permits or assents to its use in aid of committing the offense;
 (2) The property or service involved is owned by this state, any other state, the United States, a county, a municipal corporation, a township, or any political subdivision, department, or agency of any of them, is owned by a political party, or is part of a political campaign fund.[4]
The appellant's conviction for theft in office was predicated upon his violation of R.C. 2913.02(A). This statute states:
 (A) No person, with purpose to deprive the owner of property or services shall knowingly obtain or exert control over either the property or services in any of the following ways:
 (1) Without the consent of the owner or person authorized to give consent;
 (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
(3) By deception;
(4) By threat.
The state alleged the appellant violated R.C. 2913.02(A)(2) by making personal purchases using the township's business credit card, which were ultimately paid for by township funds. Thus, the appellant was found guilty of exerting control over township funds beyond the scope of the express or implied consent of the Scioto Township trustees.
The appellant does not contest the fact that he used the township's credit card for personal expenses and does not dispute that township funds were ultimately used to pay for his personal charges. Rather, the appellant contends that the evidence adduced at trial was insufficient to establish that he "knowingly" exerted control over township funds "beyond the scope of the express or implied consent" of the township. The appellant notes that he highlighted his personal expenses on each of the statements, that no one questioned his charges, and that the trustees' signatures on the checks are indicative of the trustees' consent to his use of the credit card for personal expenses. Notwithstanding the appellant's contentions, we find sufficient evidence to support the jury's verdict. While the appellant insists that he had consent to use the credit card for personal expenses, the state presented numerous witnesses (including bank officials and the township trustees) who testified that the appellant was not allowed to use the township credit card for personal purchases. Moreover, the appellant's claim that his credit card statements (revealing his personal expenses) were supposedly attached to the checks signed by the township trustees does not render the state's evidence insufficient. The jury was also presented with evidence that the appellant was responsible for preparing the township's bills for payment and that the warrants he prepared did not include a description of his personal expenses. Thus, while the township trustees may have signed the checks, there was sufficient evidence to conclude that they lacked knowledge of the personal expenses for which these checks paid. Accordingly, reasonable minds could have differed as to whether the appellant knowingly allowed township funds to pay for his personal expenses without the trustees' consent. The evidence was therefore sufficient to support the jury's verdict.
We next analyze whether the appellant's conviction is against the manifest weight of the evidence. Our role in this inquiry is to determine whether the evidence produced at trial "attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy, supra,84 Ohio St.3d at 193. In making this determination, we must "review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted." State v.Stepp (1997), 117 Ohio App.3d 561, 567; State v. Miller
(1995), 105 Ohio App.3d 679, 688. In a manifest weight of the evidence inquiry, however, we are also guided by the principle that questions of weight and credibility of evidence are primarily for the trier of fact. State v. Garrow (1995),103 Ohio App.3d 368, 371; State v. DeHass, supra, 10 Ohio St.2d 230. We will not reverse a conviction when there exists substantial evidence upon which a rational trier of fact could conclude that the prosecution has proven all of the elements of an offense beyond a reasonable doubt. Getsy,84 Ohio St.3d at 193-94; State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus; State v. Eley (1978), 56 Ohio St.2d 169, syllabus.
The appellant emphasizes his purported "highlighting" of personal purchases on the monthly credit card statements, noting his intent to keep track of the expenses and reimburse the township. For over one year, the appellant argues, no one questioned his charges. However, this does not render the jury's verdict against the manifest weight of the evidence. There was ample basis for the jury to question the appellant's contention that he had extensively highlighted the statements. Witnesses for the prosecution did not recall seeing statements highlighted to the extent that the appellant claimed. The only instance of highlighting corroborated by the township was the appellant's highlighting of charges incurred at Mad Mountain Ski Resort in February 1996. However, Mr. Griesheimer testified that this purchase was highlighted only after he had confronted the appellant about the expense. The jury may have found the appellant's contention that he had highlighted each and every personal purchase to be incredible, which was well within its province to do as the trier of fact. Further, even if the jury believed that the appellant had highlighted his personal statements, it may have nonetheless found the appellant committed a theft. The mere highlighting of personal purchases would not absolve the appellant of improperly exerting control over the township's funds absent the township trustees' consent to the appellant's use of the credit card for personal purchases and their knowledge that the highlighted expenses represented personal purchases. Cf. State v. Smith (1991),73 Ohio App.3d 668, 671 (theft by deception occurs notwithstanding highlighting of personal expenses by county employee when significance of highlighted items is known only to the defendant). In any event, the jury could have reasonably rejected the appellant's claim of intent to reimburse the township for his personal expenditures. The appellant did not reimburse the township in any meaningful manner for over one year; he essentially waited until after the township began an inquiry into the propriety of his credit card use before reimbursing the township.
The appellant also contends that the evidence shows he had consent to use the township credit card for personal expenses. However, as we have previously noted, the state's witnesses dispute this claim. The township trustees testified that they did not consent to use of the township credit card for personal purchases and bank officials testified that the township was authorized to use the credit cards for business purposes only. Further, the township's credit card agreement with the bank, which was submitted as evidence at trial, expressly stated that the credit cards were for business use only. Thus, we cannot say that the jury "clearly lost its way" when the state presented extensive testimony supporting a lack of consent to make personal purchases using the township credit card.
However, the appellant also argues that the township trustees' signatures on the checks, after they had the opportunity to review the credit card statements, constituted "express consent" for the appellant to use the township credit card for personal purchases. There was a substantial basis for the jury to reject this claim by the appellant. The trustees testified that they had no knowledge of the appellant's personal expenses when they signed the various checks that paid the township's credit card bills. As a factual matter, their signatures cannot be viewed as "express consent" for the disbursement of funds for the appellant's personal expenses when they were unaware that the appellant was submitting personal expenses for payment. The jury may have concluded that the appellant took advantage of (1) his duties as administrator, which included the preparation of bills for payment, (2) the chaotic process attendant to the trustees' signing of the township's checks, and (3) the trust that the township trustees vested in him. Any laxness on the part of the township trustees in investigating the credit card statements before signing the checks cannot be viewed as consent in this case given the express terms of the township's credit card agreement, as well as the township trustees' apparent understanding that the credit cards were to be used for township business only. Cf. State v. Washington (Feb. 13, 1998), Montgomery App. No. 16293, unreported (in theft in office case based upon unauthorized use of property, knowledge by Department of Human Services employees that defendant was using property did not constitute implied consent).[5] The third assignment of error is overruled.
Having overruled each of the appellant's assigned errors, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. and Evans, J., Concur in Judgment and Opinion.
For the Court
 BY: ___________________________ William H. Harsha, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.
[1] This is actually an appeal from a verdict in the appellant's second trial. The first trial, held in February 1998, ended in a mistrial after the jury could not reach a verdict.
[2] On this appeal, the appellant argues only that he has raised a genuine issue regarding the authenticity of the original. The appellant makes no separate Evid.R. 1003 claim that it was unfair to admit the duplicate in lieu of the original.
[3] Ohio's Evid.R. 1003 "is identical to Federal Rule 1003." Giannelli Snyder, supra, at 369.
[4] The appellant does not dispute that he was a public official at the time of the acts giving rise to his offense and does not dispute that the "property or service involved" consisted of township funds.
[5] Moreover, we note that R.C. 505.64 allows township trustees to authorize use of a township credit card only for "work-related expenses." R.C. 505.64(A). The statute also forbids unauthorized use of a township credit card. R.C. 505.64(B) 
(D). Finally, the statute states that unauthorized use of a township credit card by a township trustee, officer, employee, or appointee constitutes a violation of R.C. 2913.21 (misuse of a credit card). R.C. 505.64(D). No issue is raised on this appeal regarding the applicability of R.C. 505.64 and whether misuse of a township credit card may also constitute a violation of R.C. 2913.02(A).