OPINION
This is an accelerated appeal taken from a final judgment of the Portage County Municipal Court, Ravenna Division, wherein appellant, Shawn D. McCardel, pled no contest to driving with a prohibited breath alcohol concentration after his motion to suppress the results of a Breathalyzer test was denied.
At approximately 2:04 a.m. on July 21, 1999, appellant was stopped for speeding by Trooper Michael D. Russell ("Trooper Russell") of the Ohio State Highway Patrol. Appellant subsequently was arrested and charged with the following: driving under the influence of alcohol or drugs, in violation of R.C. 4511.19(A)(1); driving with a prohibited breath alcohol concentration, in violation of R.C. 4511.19(A)(3); and speeding, in violation of R.C. 4511.21(C).
On July 26, 1999, appellant filed a motion to suppress seeking, interalia, to exclude the results of the Breathalyzer test, which revealed that his blood alcohol concentration ("B.A.C.") was .186. A hearing on the motion to suppress was conducted by a magistrate on November 17, 1999. Thereafter, the magistrate issued a written decision on December 1, 1999, denying appellant's motion to suppress in its entry.
On July 19, 2000, appellant withdrew his former plea of not guilty and entered a plea of no contest to driving with a prohibited breath alcohol concentration, in violation of R.C. 4511.19(A)(3), while the remaining charges were dismissed.
From this judgment appellant filed a notice of appeal advancing a single assignment of error for our consideration. Before we may consider the merits of this appeal, we must resolve a preliminary matter. In his assignment of error, appellant suggests that it was the trial court that denied his motion to suppress the results of the breath test. In actuality, the magistrate who conducted the suppression hearing denied the motion. Although not appealed, this distinction is important as it raises a question of whether a magistrate has the authority to rule on a motion to suppress.
This court has held on numerous occasions that "[i]t is error for a trial court to refer a motion to suppress to a magistrate." Willowick v.Sable (Dec. 12, 1997), Lake App. No. 96-L-189, unreported, 1997 WL 799569, at 3, citing State v. Koziol (Aug. 29, 1997), Lake App. No. 96-L-193, unreported, 1997 WL 585913. See, also, State v. Chagaris
(1995), 107 Ohio App.3d 551, 556. In Koziol, we explained the consequences of having a magistrate rule on a motion to suppress:
 "* * * [W]hile it was error for the motion to suppress to be referred to a magistrate, such a reference does not result in a void judgment because the court properly had subject-mater jurisdiction over the case. Instead the result is only a voidable judgment due to the improper referral of the motion to the magistrate. If no objection to this error is raised in a timely and proper manner under Crim.R. 19(C), then any error will be waived." (Emphasis added.) Id. at 4.
 Accordingly, it was error for the trial court to refer appellant's motion to suppress to a magistrate. However, any error arising therefrom is harmless as appellant never challenged or objected to the referral. Sable at 3; Koziol at 4.
Having said that, we return to the single assignment of error where appellant has presented this court with four separate issues for our review. We will address each issue in turn.
First, appellant seems to contend that all the exhibits relating to the B.A.C. Datamaster test, which were copies of the originals, were improperly admitted because these exhibits were unauthenticated.[1]
Presumably, appellant is referring to the following documents: Exhibits G and I: B.A.C. DataMaster Instrument Check Form dated July 19, 1999 and July 26, 1999 respectively; Exhibits H and J: B.A.C. DataMaster Evidence Ticket, dated July 26, 1999 and July 19, 1999 respectively; Exhibit L: Trooper Christopher M. Heaverly's ("Trooper Heaverly") senior operator's permit; Exhibit N: a copy of the calibration solution label for bottle number 980, lot number 98290, and the test results for that particular solution; Exhibit O: the Ohio Department of Health ("the ODH") certificate approving the calibration solution for batch/lot number 98290; Exhibit P: appellant's BAC test results and report form prepared by Trooper Russell and showing a B.A.C. of .186.[2]
The crux of appellant's argument is that the above exhibits were improperly authenticated because the certification appeared on the back of each document, and it failed to specifically identify the document it purported to authenticate. Appellant claims he objected to the authenticity of these exhibits. However, a review of the transcript of the suppression hearing shows that appellant, at most, made an objection to the admissibility of the state's exhibits on the basis that "the certified copies are certified copies of the original." He never made a specific objection to the exhibits on the basis that the documents were not properly authenticated because the certification failed to specifically identify the document it purported to authenticate. As a result, any error in admitting these exhibits into evidence has been waived, except plain error. Crim.R. 52. We cannot find plain error unless we determine that, but for the error, the outcome of the trial would clearly have been different. State v. Long (1978),53 Ohio St.2d 91, paragraph two of the syllabus.
Appellant's argument to suppress the above enumerated documents is based on this court's decision in Aurora v. Lesky (1992),79 Ohio App.3d 568. In Lesky, the exhibits introduced by the state contained a certification which appeared on a separate piece of paper that was then stapled to each document. In addition, the certification failed to specifically identify the document that it purported to authenticate. Id. at 570.
Upon consideration, we held that, under those facts, the certification paper must include a specific identification of the document it purported to certify. Id. at 571. Thus, appellant urges that our holding inLesky requires a certification must also describe the document certified even when the certification appears on the back of the document. For the reasons that follow, we conclude that Lesky is factually distinguishable from the instant matter and thus, inapplicable.
In the instant case, there is no question concerning the exhibit to which the certification refers.[3] Unlike the factual scenario inLesky, the certification in the instant matter is prominently displayed on the back of each exhibit and bears the signature of the custodian of the document.[4] "Where the certification is on the document itself, and the document is but a single page, no further identification of the document is necessary." State v. Tannert (Mar. 16, 2001), Portage App. No. 2000-P-0028, unreported, 2001 Ohio App. LEXIS 1243, at 5. See, also, State v. Sprouse (Sept. 28, 1995), Ross App. No. 94 CA 2064, unreported, 1995 Ohio App. LEXIS 4471, at 14; Flauto at 7. Accordingly, the certification on each of the state's exhibits was properly authenticated pursuant to Evid.R. 902(4), and the magistrate did not abuse its discretion by admitting these exhibits into evidence.[5]
Further, appellant suggests that there was no testimony from the records' custodian for the Ohio State Highway Patrol that Exhibits N and O were received in the regular course of business. From this, appellant seems to conclude that these exhibits were not properly authenticated under Evid.R. 901. However, as discussed above, Exhibits N and O were properly certified and self-authenticated under Evid.R. 902(4). Ergo, no extrinsic evidence, such as testimony from the records custodian, was needed. See Lesky at 571 (holding that "in the absence of a proper certification * * * there must be an alternate method of authentication by way of extrinsic evidence pursuant to Evid.R. 901.")
The second issue presented under appellant's lone assignment of error challenges the admissibility of Exhibit O, to-wit: the ODH certificate approving the calibration solution for batch/lot number 98290. Given that Exhibit O originated from the ODH, appellant contends that it was improper for the custodian of the records for the Ohio State Highway Patrol to certify this document. From this, appellant concludes that Exhibit O could have been properly certified only by a custodian of the ODH.
To support his contention, appellant relies on Columbus v. Robbins
(1989), 61 Ohio App.3d 324, 327-329. The Robbins court construed Ohio Adm. Code 3701-53-04 to require certification by the ODH that a proper solution was used to calibrate the Breathalyzer machine:
 "Pursuant to Ohio Adm. Code 3701-53-04, the * * * [ODH] must produce a document certifying that the solution used to calibrate a BAC Verifier was proper. The document admitted at trial was not certified by ODH, but was only a copy of an uncertified ODH document maintained in the police files. While the document in question was attested by Sergeant K.R. Bell as the keeper of the calibration log book for that particular machine, it was not certified by ODH, as mandated by Evid.R. 1005 and 902. The fact that the uncertified document was sent to another agency who could certify that it was part of its official file does not eliminate the deficiency. Hence, the document does not comply with the requirements of Ohio Adm. Code 3701-53-04." (Emphasis added.) Robbins at 328.
 We are not persuaded by appellant's argument. Unlike the factual scenario in this case, the certificate in Robbins was only a copy of an uncertified ODH document which was kept in the police files. As this court explained in State v. Lewis (Sept. 30, 1992), Portage App. No. 92-P-0013, unreported, 1992 WL 267403, at 4-5, we declined to apply the holding announced in Robbins:
 "* * *[T]he Robbins court failed to recognize that Ohio Adm. Code 3701-53-04(A) only requires that `a solution of ethyl alcohol approved by the director of health' be used in calibrating the machine. Approval of the solution by the director of health for use in calibration is what is mandated in the regulation, not certification of the document for evidentiary purposes. Easter, supra. Different rules of evidence could be used to make the document admissible otherwise. Proper approval by the director of health is clearly what transpired in the instant case.
 "Exhibit `D-1' is a copy of a document having the seal of the Department of Health; is signed by the Director of Health and the Chief of the Alcohol Testing, Approval Permit Program; appears parenthetically and perhaps redundantly certified as a true and accurate copy by the custodian of the record of the Ohio State Highway Patrol; and is notarized by a notary public/deputy clerk.
 "As set forth above, these particular documents, `D-1' and `D-2,' comply literally with the Rules of Evidence. Because they are admissible under these rules, and because the ODH regulations standing alone do not set forth evidentiary requirements, appellant's second assignment of error is overruled." (Emphasis added.) See, also, State v. Easter (1991), 75 Ohio App.3d 22.
 Furthermore, in Flauto, supra, the state submitted into evidence a certificate issued by the ODH approving the calibration solution used in performing the calibration check tests. As in the present case, the certificate was not certified by the ODH; rather, it contained the following certification by the local police department:
 "`I, * * *, being first duly sworn, according to law, hereby state that I am custodian of the records of the Brimfield Police Department, and that this is a true and accurate copy of the original record which is in my custody.'" Flauto at 6.
 Although addressing a different issue, we determined that the certificate was properly authenticated pursuant to Evid.R. 902(4). Id. at 7; See, also, State v. Starkey (Sept. 25, 1998), Portage App. No. 97-P-0098, unreported, 1998 WL 684175, at 2 (holding that the certificate from the ODH regarding the calibration solution was properly authenticated under Evid.R. 902 when the custodian of the Windham Police Department executed an affidavit stating that the certificate was a true and accurate copy of the original which was kept in his custody). Apparently, this court was not concerned with the fact that the certificate was certified by a local police department rather than the ODH.
With this in mind, we determine that Exhibit O was properly certified by the Ohio State Highway Patrol. The pivotal question is whether Trooper Heaverly is a "person authorized to make a certification" pursuant to Evid.R. 902(4). This certificate was received from the ODH and thus became part of the record of the Ohio State Highway Patrol. It follows that Trooper Heaverly, as a custodian of records for the Ohio State Highway Patrol, was authorized to certify the certificate issued by the ODH as its own record.
In the third issue for review, appellant argues that because Exhibits N and O relate to the same calibration solution, they should have been certified by the same records custodian to properly determine if the same bottle and batch/lot numbers appear on each document.
We agree with appellant that these exhibits bear the signature of two different custodian of records of the Ohio State Highway Patrol. However, the purpose of a custodian of records when authenticating a document is to certify that he or she has compared the copy with the original to assure that the copy is what it purports to be, to-wit: a true and accurate copy of the original. Lesky at 571. See, also, Evid.R. 901(A) and 902. We are unaware of, nor has appellant provided this court, any case law requiring a custodian to compare one document to a totally unrelated document for purposes of authentication.
Finally, appellant claims that the state failed to comply with Ohio Adm. Code 3701-53-04(4), which governs the refrigeration of calibration solution. Appellant specifically maintains that Trooper Russell did not have actual knowledge of whether the calibration solution used was refrigerated and did not know at what temperature the solution was refrigerated.
After a defendant raises the issue of a test's reliability, the state is only required to prove substantial compliance with the ODH regulations. Once the state demonstrates substantial compliance, the burden then shifts to the defendant to show he or she was prejudiced by the state's failure to strictly comply with the regulations. Defiancev. Kretz (1991), 60 Ohio St.3d 1, 3.
Ohio Adm. Code 3701-53-04(C) requires that the "[c]alibration solutions shall be kept under refrigeration after first use, when not being used. The calibration solution container shall be retained for reference until the calibration solution is discarded." Accordingly, the burden was on the state to show substantial compliance with this requirement.
While we agree with appellant that there was nothing in the record to indicate the exact temperature at which the calibration solution was stored, this is of no consequence. Ohio Adm. Code 3701-53-04 does not set forth a particular temperature range to store the solution. Rather, the regulation merely provides that the solution be kept refrigerated after first use. See, e.g., State v. Brown (June 15, 1998), Madison App. No. CA97-06-030, unreported, 1998 WL 314379, at 3; State v. Kopatz (Mar. 11, 1991), Stark App. No. CA-8293, unreported, 1991 WL 34876, at 2.
Moreover, there is nothing in the record to support appellant's allegation that the solution was not refrigerated. Contrary to appellant's assertion, Trooper Russell testified that the solution used to calibrate the Breathalyzer machine was, indeed, refrigerated.[6] Nor was there any evidence of a mechanical problem with the refrigerator.
Hence, we determine that the state carried its burden to show substantial compliance with the requirement that the solution used to calibrate the equipment used to administer appellant's breath test be kept refrigerated when not in use. See, e.g., Brown at 3 (holding that an officer's testimony that the calibration solution was kept refrigerated but was unaware of the precise temperature of the refrigerator was sufficient to show that the state substantially complied with Ohio Adm. Code 3701-53-04). See, also, State v. Hammons (May 31, 1990), Montgomery App. No. 11889, unreported, 1990 WL 73727, at 4.
In summation, we conclude that the magistrate did not error in admitting the state's exhibits as they were properly certified for purposes of authentication. Furthermore, the state substantially complied with all of the applicable ODH regulations. Having done so, the burden then shifted to appellant to demonstrate prejudice. Appellant has failed to satisfy his burden.
Therefore, based on the foregoing analysis, appellant's sole assignment of error is without merit, and the judgment of the trial court is affirmed.
JUDGE JUDITH A. CHRISTLEY, FORD, P.J., GRENDELL, J., concur.
[1] Because appellant challenges the admissibility of the exhibits relating to the B.A.C. DataMaster test, we will limit our analysis accordingly. Therefore, we will not consider the admissibility of the following exhibits: Exhibit A: Trooper Russell's electronic speed measuring operator's certificate; Exhibit B: certificate of calibration and certificate of accuracy of the doppler traffic radar; and Exhibit C: Trooper Russell's certificate indicating that he has completed a course in sobriety testing.
[2] It is unclear from appellant's brief whether he also challenges the authenticity of the following exhibits: Exhibit D: implied consent form prepared by Trooper Russell; and Exhibit F: Trooper Russell's senior operator's permit. Trooper Russell was the arresting officer, and he administered the Breathalyzer test to appellant. Further, at the suppression hearing, Trooper Russell testified that Exhibits D and F were fair and accurate copies. Thus, pursuant to Evid.R. 901(B)(1), these exhibits were properly authenticated by Trooper Russell's testimony. Moreover, on the back of each exhibit was a certification. Thus, pursuant to Evid.R. 902(4), Exhibits D and F were also properly admitted as self-authenticating documents. See, e.g., State v. Flauto (Dec. 23, 1994), Portage App. No. 93-P-0073, unreported, 1994 Ohio App. LEXIS 5863, at 6-7.
[3] Appellant makes reference to Exhibit N, which has only one certification but contains two copied documents. According to appellant, it is impossible to determine which document the custodian was certifying. However, upon consideration, it is evident that the certification contained on the back of this exhibit was referring to both of the copied documents in Exhibit N. Additionally, appellant takes issue with Exhibit O, the ODH certificate approving the calibration solution for batch/lot number 98290. On the bottom of this certificate appears handwritten bottle numbers of "980" and "1011" and the number "980" is circled. From this, appellant claims that the certificate was altered, and it was unclear which bottle of solution was actually used to calibrate the Breathalyzer machine. However, at the suppression hearing, Trooper Russell testified that bottle solution number 980 was used to calibrate the machine. We further note that Exhibit N confirms that batch/lot number 98290 contained bottle number 980.
[4] The state's exhibits contained the following certification:
 "I, ___, being first duly sworn according to law, hereby state that I am custodian of the records of the Ohio State Highway Patrol, and that this is a true and accurate copy of the original record which is in my custody."
 The statement is then signed by the custodian, acknowledged by a notary public/deputy clerk, and accompanied by a seal.
[5] As an aside, we note that Exhibit P was also properly authenticated under Evid.R. 901(B)(1).
[6] During the suppression hearing, Trooper Russell provided the following testimony:
 "Q. [by prosecutor]: How is that batch [98290] or that solution maintained at the Post?
 "A. It's kept refrigerated in the well, in the room at the Patrol Post in a refrigerator.
"Q. Do you know what temperature it's maintained at?
"A. No, I don't."