[Cite as *State v. Wynn*, 2014-Ohio-420.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

STATE OF OHIO

      Plaintiff-Appellee

v.

ANTONIO L. WYNN

      Defendant-Appellant


Appellate Case No.    25097

Trial Court Case No.   2010-CR-3822/1

(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

### O P I N I O N

Rendered on the 7th day of February, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. No. 0020084, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

ENRIQUE G. RIVERA-CEREZO, Atty. Reg. No. 0085053, 765 Troy Street, Dayton, Ohio 45404
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Defendant-Appellant, Antonio L. Wynn, appeals from his conviction on a charge of complicity to commit felony murder in violation of R.C. 2923.03(A)(2) and R.C. 2903.02(B), with a firearm specification. Wynn contends that he was denied due process and his right of confrontation when the trial court refused to permit him to cross-examine and impeach his co-defendant. Wynn also maintains that the trial court erred in admitting a letter that he purportedly wrote to his co-defendant.

**{¶ 2}** In addition, Wynn contends that his trial attorney rendered ineffective assistance of counsel, and that the trial court abused its discretion when it allowed a juror to serve after the juror had inappropriate contact with a police detective. Finally, Wynn argues that the trial court erred in refusing to instruct the jury on a lesser-included offense of involuntary manslaughter.

**{¶ 3}** We conclude that Wynn was not denied due process or a right of confrontation either by the trial court's application of Evid.R. 607(A), or by the court's failure to call Wynn's co-defendant as a court's witness pursuant to Evid.R. 614(A). However, the trial court did incorrectly conclude that evidence pertaining to the lack of a plan to harm the victim was irrelevant. Wynn was not prejudiced by the error, because the court did, in fact, allow Wynn to present evidence of the absence of a plan.

**{¶ 4}** Additionally, we conclude that the trial court did not err in its rulings about the letter that Wynn allegedly wrote. The letter was properly authenticated by its content and the circumstances under which it was delivered, which demonstrated a sufficient foundation for attributing authorship to Wynn. The State also did not fail to appropriately disclose the letter to Wynn.

**{¶ 5}** We further conclude that trial counsel did not render ineffective assistance of counsel by allegedly failing to discuss the letter with Wynn or in failing to request a continuance. Wynn has not demonstrated that the result of the trial would have been any different had his counsel discussed the letter with him, and nothing in the record indicates that Wynn had information about the letter that would have changed counsel's defense strategy. Moreover, discussing the letter with Wynn would not have changed the fact that a substantial amount of evidence, both video and testimonial, supported the conviction. Furthermore, requesting continuances is a matter of trial tactics and strategy, and we will not second-guess trial counsel's decision in this regard.

**{¶ 6}** We also conclude that the trial court did not err in allowing a juror to serve at trial after the juror had contact with a police detective. The trial court questioned the juror in chambers with counsel present, and both the State and defense indicated that they were satisfied with the juror's explanation that the contact had nothing to do with the case. The trial court did not abuse its discretion in choosing not to investigate the matter further.

**{¶ 7}** Finally, the trial court did not err in refusing to instruct the jury on the lesser-included offense of involuntary manslaughter. The evidence would not permit the jury to reasonably reject the greater offense of complicity to commit felony murder. Furthermore, Wynn's actions in assaulting the victim had no connection with the felonious assault with the gun, and did not proximately result in the victim's death. A jury instruction on involuntary manslaughter would not be an appropriate instruction, because the victim died as a proximate result of being shot, rather than from Wynn's assault.

**{¶ 8}** Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

{¶ 9}    The murder charge in this case arose from Wynn's involvement in the December 3, 2010 death of Deonta Beans.  Beans was shot and killed by Wynn's friend, George Turner, while Beans was standing inside a convenience store located in Dayton, Ohio.  Wynn was with Turner during the shooting, and punched the victim twice before Turner fired his gun.  After Wynn pled not guilty to the complicity charge, his case was tried before a jury.

{¶ 10}    At trial, the State called two eyewitnesses to testify regarding the shooting – the store cashier and Beans' 12-year-old cousin, D.T.  The State also presented video footage and stills of the shooting that were captured by the convenience store's security cameras.  The testimony and video evidence established that Beans and D.T. were standing near the entrance of the convenience store when Turner and Wynn walked in together.  As  the two men walked in, Wynn punched Beans with his right hand, which was covered by a black glove; his left hand was gloveless.  Turner then pulled out a gun and aimed it at Beans' head.  When Beans backed up and tried to get the gun from Turner's left hand, Turner used his right hand to hold Beans' arm back.  As Turner struggled with Beans, Wynn jumped in and punched Beans a second time.  Immediately after the second punch, Turner fired a shot at Beans.  Turner and Wynn then both ran from the store.

{¶ 11}    Shortly after the shooting, the police were able to identify Turner and Wynn as suspects.  On the evening of the shooting, the police found Wynn at his home, which was located just a few blocks from the store.  Wynn was taken into custody for questioning and was later arrested.   He gave the police an address where Turner could be found, but Turner was not

at that location.   Turner was not apprehended until January 21, 2011.

{¶ 12}   On the day Turner was apprehended, he was interviewed by the police, and gave a statement.   Turner stated that Beans and a few other men had robbed him at gunpoint a week before the shooting, and that he was angry and frustrated by what people were saying about the robbery.   He also claimed that he was concerned that Beans might  try to rob him again.   As a result of the robbery, Turner began to carry a gun in his vehicle at all times.   Turner further stated that when he saw Beans in the convenience store on December, 3, 2010, he did not intend to shoot Beans, but merely went in the store to talk to Beans and get him to stop saying what he was saying on the streets.[1]   This version of events supported Wynn's defense theory, which was that Wynn had no knowledge of Turner's gun, and that Turner shot Beans on a whim, which Wynn could not have either anticipated or controlled.

{¶ 13}   Turner was interviewed by the police and prosecutors again on October 28, 2011, November 9, 2011, and  February 7, 2012.   Turner's statements during these interviews were much less favorable to Wynn.   Turner claimed that he had confided in Wynn after Beans had robbed him, and that they had talked about seeking revenge.   In fact, when Turner told Wynn that he had been robbed, Wynn said, "it's on when I see [Beans]."   Transcript of Proceedings, Vol. IV, p. 696, ln. 4-7.

{¶ 14}   In this version of the story, Turner said that he and Wynn drove by the convenience store and saw Beans standing inside.   Turner then turned the car around and drove to Wynn's house to get the gun.   When they arrived at Wynn's house, Wynn went into the house

---

[1]   According to the video interview, which we have reviewed, Beans was bragging to others about the robbery and was telling people that he was going to do other "stuff" to Turner.

and Turner stayed in the car. When Wynn came back out, he had a .40 caliber Glock semi-automatic gun. Wynn got back in the car, and put the gun in Turner's lap. Thereafter, they returned to the convenience store, intending to harm Beans.

{¶ 15} Turner also claimed that before they went into the store, Wynn grabbed two gloves from the back seat of the car and gave Turner the left glove. Turner was left-handed, and wore the glove to prevent gun residue from getting on his hand. According to Turner, Wynn put on the right glove because he was right-handed.

{¶ 16} After giving the police this information, Turner entered into a plea agreement with the State. Approximately one week before Wynn's trial, Turner pled guilty to tampering with evidence, felony murder with the underlying offense of felonious assault, and a firearm specification. As part of the plea agreement, Turner agreed to testify truthfully in Wynn's trial. In exchange, the State agreed to recommend that the potential sentence for tampering with evidence would run concurrently with the other charges. This would result in an 18-year-to-life prison term rather than a longer potential term of up to 21 years to life.

{¶ 17} At Wynn's trial, the State did not call George Turner as a witness during its case in chief. If Turner were called, the defense expected Turner to testify in line with his later statements, which indicated that Wynn had played a greater role in the shooting. Accordingly, Wynn wanted to impeach Turner's testimony with his first statement. Because the State did not call Turner to testify, Wynn's counsel asked the court to call Turner as a witness under Evid.R. 614(A), so that the defense could question him on cross-examination and eliminate the issue of the defense's inability to impeach Turner under Evid.R. 607(A). The trial court overruled the request, stating that it had limited knowledge of the evidence at that point, and lack of time to

digest our prior decision in *State v. Arnold*, 189 Ohio App.3d 507, 2010-Ohio-5379, 939 N.E.2d 218 (2d Dist.), which had just been given to the court. However, the court also indicated that its opinion could change during Turner's testimony.

{¶ 18} In response, Wynn's counsel then asked the court to let the defense question Turner as if on cross-examination under Evid.R. 611(C), on grounds that Turner had entered into an agreement with the State to testify against Wynn, and was a witness identified with an adverse party. The trial court deferred ruling on the request, stating that it was not ripe because Turner had not yet testified. The court indicated that it would amend its ruling if Turner's testimony warranted it.

{¶ 19} Ultimately, the defense called Turner as a witness, and as expected, he testified in line with his later statements. During direct examination, Turner testified that he intended to harm Beans. Turner also said that he did not recall telling the police that he did not intend to shoot Beans. At that point, the trial court allowed the defense to refresh Turner's recollection with his first statement. After viewing his January 21, 2011 video interview with the police, Turner admitted telling the police that it was not his intention to shoot Beans. He admitted that he told the police, instead, that his intention was to go in and talk to Beans and get him to stop the comments he was making on the streets.

{¶ 20} During direct examination, Turner also denied keeping a gun in his car after being robbed by Beans, and said he did not recall telling the police otherwise. Once again, the trial court permitted the defense to refresh Turner's recollection with the video interview. After his recollection was refreshed, Turner admitted telling the police that he started carrying his gun in his vehicle at all times after being robbed by Beans. The trial court did allow the defense to

ask some leading questions and to refresh Turner's recollection, but it did not amend its prior rulings. Therefore, Turner was never called as the court's own witness, nor was he cross-examined as a witness identified with an adverse party.

{¶ 21} During the State's cross-examination, Turner continued to testify in line with his later statements. Turner testified that he and Wynn had discussed seeking revenge on Beans, and described how he and Wynn had obtained the gun from Wynn's house on the day of the shooting. He also mentioned the left glove that Wynn gave him to wear before going into the store, and indicated that Wynn wore the right glove. Turner further testified that Wynn was close enough to hear Turner rack the gun and chamber a bullet before they went inside the store.

{¶ 22} In addition, Turner testified that he had received a letter from Wynn while they were both being held in the Montgomery County Jail. The letter is unsigned, but Turner stated that he could tell the letter was from Wynn based on the contents. The letter contained the greeting, "What's up brother," which is how Turner claimed that he and Wynn had addressed each other since they were eight years old. Transcript of Proceedings. Vol. IV, p. 729, ln. 3-11; 733, ln. 4-12. The letter also referred to "Nicky," which was the name of one of Wynn's girlfriends. *Id*. at 729, ln. 14-20.

{¶ 23} The letter also contained information about the events surrounding the criminal case. Specifically, the author claimed that he purposely led the police to a wrong address when they were looking for Turner. In addition, there was an issue in the letter about Turner not "snitching" on Wynn regarding the charges in the case. The author offered Turner money in exchange for not providing any information or for not telling the authorities what happened in the case. According to Turner, the letter was hand-delivered to him by Wynn's cell mate. Turner

gave the letter to his attorney, and his attorney then   provided it to the State.

{¶ 24}    Wynn objected to admission of the letter into evidence on grounds that it was not properly authenticated and was not timely disclosed.   The State received the letter on February 2, 2012, and disclosed it to Wynn's counsel the same day.   The disclosure was made three days before trial and six days before the letter was offered as evidence.   The trial court held that the letter was properly authenticated, but still decided to exclude it as a physical exhibit.   As a result, the jury only heard Turner's testimony about the letter.

{¶ 25}    Finally, at the end of the trial, Wynn asked the court to instruct the jury on the lesser-included offense of involuntary manslaughter, based on the predicate of a misdemeanor assault.   The trial court overruled the request on grounds that Wynn had been charged as an aider and abettor, not as a principal offender in a felonious assault.

{¶ 26}    The jury found Wynn guilty as charged, and the trial court sentenced him to 18 years to life in prison.   Wynn appeals from his conviction and sentence.


II.   First Assignment of Error

{¶ 27}    Wynn's First Assignment of Error is as follows:

The Trial Court Erred to the Prejudice of the Appellant When it Did Not Allow Defendant's Attorney to Cross Examine and Impeach Mr. Turner in Violation of the Defendant's Sixth Amendment Right of Confrontation of Witnesses under the Federal Constitution and Article I, Section 10 of the Ohio Constitution and the Defendant's Due Process Rights Guaranteed under the Fifth and Fourteenth Amendment of the United States Constitution and Article I,

Section 16 of the Ohio Constitution.

{¶ 28}    Under this assignment of error, Wynn argues that the trial court erred in: (1) preventing him from cross-examining and impeaching George Turner; and (2) excluding relevant evidence regarding Wynn's mental state.   Wynn claims that the trial court's errors prevented him from presenting a complete defense, and thus denied him his constitutional rights to due process and confrontation.

A.   Did the Trial Court Err in Preventing Appellant From

Cross-examining and Impeaching George Turner?

{¶ 29}    Wynn contends that the trial court's application of Evid.R. 607(A) violated his rights to due process and confrontation, because he was prevented from cross-examining and impeaching George Turner's damaging testimony.   Wynn also contends that the trial court abused its discretion by failing to call Turner as the court's own witness under Evid.R. 614(A).

{¶ 30}    As a preliminary matter, we note that the right to cross-examine an adverse witness, which includes the right to impeach, is essential to a fair trial and due process. *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed. 297 (1973); *State v. Green*, 66 Ohio St.3d 141, 147, 609 N.E.2d 1253 (1993).   The right of cross-examination is also "implicit in the constitutional right of confrontation, and helps assure the 'accuracy of the truth-determining process.' " *Chambers* at 294, quoting *Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970).   (Other citation omitted.)   Nonetheless, "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process."   (Citation omitted.)   *Id.* at 295.   "But its

denial or significant diminution calls into question the ultimate 'integrity of the fact-finding process' and requires that the competing interest be closely examined." *Id.,* quoting *Berger v. California*, 393 U.S. 314, 315, 89 S.Ct. 540, L.Ed.2d 508 (1969).

### 1. Evid.R. 607(A)

**{¶ 31}**    Evid.R. 607(A) prevents a party from impeaching its own witness unless the party is surprised by the testimony and the testimony is damaging.   In this regard, the rule states that:

> The credibility of a witness may be attacked by any party except that the
>
> credibility of a witness may be attacked by the party calling the witness by means
>
> of a prior inconsistent statement only upon a showing of surprise and affirmative
>
> damage. This exception does not apply to statements admitted pursuant to Evid.
>
> R. 801(D)(1)(a), 801(D)(2), or 803.   Evid.R. 607(A).

**{¶ 32}**    In the case before us, Wynn wanted to cross-examine Turner so that he could impeach Turner with the first statement that he gave the police.   Evid.R. 607(A) precluded this tactic, because Wynn called Turner as a witness, and Turner's testimony was not a surprise. Wynn claims that despite the application of Evid.R. 607(A), the trial court should have allowed him to cross-examine and impeach Turner, based on the United State Supreme Court's decision in *Chambers*.

**{¶ 33}**    As an initial matter, we note that:

> "*Chambers* was an exercise in highly case-specific error correction."
>
> *Montana v. Egelhoff* (1996), 518 U.S. 37, 52, 116 S.Ct. 2013, 135 L.Ed.2d 361

(plurality opinion). The case "establish[ed] no new principles of constitutional law" but "h[e]ld quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial." (Emphasis added.) *Egelhoff*, quoting *Chambers*, 410 U.S. at 302–303, 93 S.Ct. 1038, 35 L.Ed.2d 297. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 69.

**{¶ 34}** According to Wynn, the facts and circumstances in the present case are analogous to *Chambers*. The facts of *Chambers* are as follows.

**{¶ 35}** In 1970, the defendant, Leon Chambers, was tried and convicted of murdering a police officer in Mississippi. *Chambers* at 285. At trial, Chambers wanted to cross-examine an individual named Gable McDonald, who had previously confessed to murdering the same officer, but had repudiated his confession. *Id*. at 287-289. Because the State did not call McDonald as a witness, Mississippi's "voucher rule," a rule which prevents a party from impeaching its own witness, prevented Chambers from cross-examining McDonald. *Id.* at 290-291, 295. The trial court also prevented Chambers from introducing the testimony of three witnesses who claimed that McDonald had told them he was the one who killed the officer. *Id.* at 292-293. This testimony was excluded on hearsay grounds. *Id.* Accordingly, Chambers was prevented from presenting a large portion of his defense due to the application of Mississippi's rules of evidence.

**{¶ 36}** The United States Supreme Court noted that Mississippi's voucher rule had been condemned as "archaic, irrational, and potentially destructive of the truth-gathering process," and had also been "rejected altogether by the newly proposed Federal Rules of

Evidence, Rule 607 * * *." *Id*. at 297, fn. 8 and fn. 9. Therefore, after determining that McDonald's testimony was adverse and damaging to Chambers, the Court concluded that the voucher rule, "plainly interfered with Chambers' right to defend against the State's charges." *Id*. at 298. However, the Court did not determine whether this error alone warranted reversal. This is because Chambers had based his due process argument on the impact of the error in conjunction with the exclusion of the testimony regarding McDonald's incriminating statements. *Id.* at 298. As a result, the Court continued its analysis in order to determine whether the exclusion of the testimony as hearsay violated the defendant's due process rights.

{¶ 37} In its analysis, the Court considered that the witnesses' hearsay statements regarding McDonald's confessions "were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability." *Chambers,* 410 U.S. at 300, 93 S.Ct. 1038, 35 L.Ed.2d 297. Specifically, the court pointed out that: (1) each confession was spontaneously made to a close acquaintance shortly after the murder was committed; (2) each confession was corroborated by some other evidence in the case; (3) each confession was self-incriminatory and was against McDonald's interest; and (4) the declarant (McDonald) was available for cross-examination. *Id*. at 300-301. As a result, the Court determined that:

> The testimony rejected by the trial court * * * bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest. That testimony also was critical to Chambers' defense. In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice. *Id.* at 302.

**{¶ 38}** The Court ultimately concluded "that the exclusion of this critical evidence, coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process." *Id*. at 302.

**{¶ 39}** The present case is distinguishable from *Chambers* for various reasons. First, Evid.R. 607(A) is different from the voucher rule in *Chambers*, which had been rejected by the Federal Rules of Evidence and was condemned as archaic and irrational. Unlike the voucher rule, Ohio's Evid.R. 607(A) lets parties impeach their own witnesses by means of a prior inconsistent statement, upon a showing of surprise and affirmative damage. Furthermore, the Supreme Court of Ohio "has not detected a constitutional infirmity in Evid.R. 607, as more than thirty years have passed since its enactment, and the court has not, to date, directly addressed the issue." *State v. Arnold*, 2d Dist. Montgomery No. 24687, 2013-Ohio-5336, ¶ 123. We also observed in *Arnold* that the approach used in Ohio's Evid.R. 607 is consistent with subsequent authority of the United States Supreme Court, which stresses that:

> "A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. A defendant's interest in presenting such evidence may thus ' "bow to accommodate other legitimate interests in the criminal trial process." ' *Rock [v. Arkansas*, 483 U.S. 44, 55, 107 S.Ct. 2704, 97 L.Ed.3d 37(1987) ], * * * (quoting *Chambers*, [410 U.S. at 295, 93 S.Ct. 1038, 35 L.Ed.2d 297] ). As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes that they are designed to

serve.' *Rock*, *supra*, at 56, 107 S.Ct., at 2711 ---- *. Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." (Citations and footnote omitted.) *U.S. v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). *Arnold* at ¶ 123.

**{¶ 40}** In the case before us, the trial court's application of Evid.R. 607(A) prevented Wynn from cross-examining Turner, who ultimately provided damaging testimony. However, the record demonstrates that Wynn was not completely foreclosed from confronting Turner. Unlike the defendant in *Chambers*, the trial court permitted Wynn to refresh Turner's recollection during direct examination, through the video interview that the police recorded. After having his recollection refreshed, Turner testified about key portions of the statement, including: (1) that it was not his intention to shoot; instead, his intention was to go into the store, talk to Beans, and get Beans to stop saying things in the streets; (2) that he started carrying his gun in his vehicle at all times after he was robbed by Beans; (3) that he did not mean to shoot Beans; and (4) that he did not go into the store with the intent to shoot Beans; he was just going to "smack" Beans.

**{¶ 41}** Turner also admitted that he had previously told the police a story that differed from his testimony, and was consistent with Wynn's defense. As a result, Wynn was essentially given an opportunity to impeach Turner by using Turner's prior inconsistent statement.

**{¶ 42}** Furthermore, even if we concluded that the application of Evid.R. 607(A) infringed Wynn's right to cross-examine an adversarial witness, *Chambers* does not hold that this alone would require reversal. Instead, *Chambers* based its reversal on the fact that exculpatory evidence was also excluded on hearsay grounds, when the evidence had "persuasive assurances

of trustworthiness." *Chambers*, 410 U.S. at 302, 93 S.Ct. 1038, 35 L.Ed.2d 297.

{¶ 43}   *Chambers* and Evid.R. 804(B)(3), which provides a hearsay exception for statements against interest, "have the same indicia of trustworthiness." *Arnold*,  2d Dist. Montgomery No. 24687, 2013-Ohio-5336, at ¶ 132, citing *State v. Swann*, 119 Ohio St.3d 552, 2008-Ohio-4837, 895 N.E.2d 821, ¶ 28.   In fact, " '[t]he against-interest exception was drafted with *Chambers* in mind and requires "corroborating circumstances" for statements offered to exonerate defendants, the justification being that they can be fabricated by friendly defense witnesses (and attributed to unavailable speakers) and are hard to rebut even if false.' "  *Swann* at ¶ 28, quoting Mueller & Kirkpatrick, *Evidence*, Section 8.82, at 1118 (1995).

{¶ 44}   In this regard, Evid.R. 804(B)(3) allows admission of statements against interest, and indicates that if a declarant is "unavailable" as a witness, the following is not excluded by the hearsay rule:

> A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true.   A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the truthworthiness of the statement.   (Footnote omitted.)

{¶ 45}   Evid.R. 804(A) defines "unavailability" to include various situations, such as ones in which a declarant "testifies to a lack of memory of the subject matter of the declarant's

statement." Evid.R. 804(A)(3). Since Turner indicated at numerous points during his testimony that he could not recall having made certain statements to the police, the evidence could have arguably have been admitted as an exception to the hearsay rule, if certain indicia of reliability were present.

{¶ 46} Unlike the testimony in *Chambers*, however, Turner's video interview does not possess persuasive assurances of trustworthiness. As an initial matter, we note that while certain parts of Turner's video interview, such as his admission of having shot Beans, were against Turner's penal interest, the interview viewed as a whole indicates that Turner was attempting to establish a case of self-defense. Such a motive would render the statement less trustworthy.

{¶ 47} In this regard, Turner told the police that he took a weapon into the store because he knew that Beans carried a weapon, and Beans had previously robbed him by using a gun. Turner also told the police that he had no intention of harming Beans, but just wanted to talk to him. In addition, Turner stated that he and Wynn did not plan the murder, and that he did not know why Wynn hit Beans. In fact, Turner suggested that the situation probably would not have "gone down" that way if Wynn had not hit Beans. Turner further stated that when he came into the store, Beans said something, and he got scared. According to Turner, he thought Beans had a weapon, and fired. Turner classified the whole situation as a "mistake."

{¶ 48} Moreover, although Turner was technically available for cross-examination, his statement was not spontaneously made to a close acquaintance shortly after the shooting. The statement was made to the police, again, in an apparent effort to establish self-defense, and it was made about six weeks after the shooting.

{¶ 49} Turner's statement was also not corroborated by other evidence, including the

video footage and stills. The video depicts Wynn wearing one glove on his right hand, which corroborates Turner's claim that Wynn had grabbed a glove for each of them to put on before they went into the convenience store. Further, the video does not show any hesitation or surprise from Wynn when Turner pulled out his gun. Instead, Wynn continued to act in concert with Turner, which corroborates Turner's claim that Wynn was aware of the gun before going into the store. Most importantly, however, the video shows that Wynn threw his second punch at Beans when Turner began to struggle to keep Beans away from the gun. The fact that Wynn jumped in and punched Beans at that moment corroborates Turner's testimony that Wynn was there to help him harm and seek revenge against Beans.

{¶ 50} For the foregoing reasons, the facts in this case are not analogous to *Chambers*. Accordingly, Wynn was not denied either due process or a right of confrontation by the trial court's application of Evid.R. 607(A).

## 2. Evid.R. 614(A)

{¶ 51} Wynn also contends that the trial court abused its discretion by refusing to call Turner as the court's witness under Evid.R. 614(A). In this regard, the rule states that: "The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." Evid.R. 614(A). *In Arnold*, 189 Ohio App.3d 507, 2010-Ohio-5379, 939 N.E.2d 218 (2d Dist.), we made the following observations regarding a court's ability to call witnesses under Evid.R. 614(A):

"A trial court possesses the authority in the exercise of sound discretion to call individuals as witnesses of the court." *State v. Adams* (1980), 62 Ohio St.2d

151, 16 O.O.3d 169, 404 N.E.2d 144, paragraph four of the syllabus. "It is well-established that a trial court does not abuse its discretion in calling a witness as a court's witness when the witness's testimony would be beneficial to ascertaining the truth of the matter and there is some indication that the witness's trial testimony will contradict a prior statement made to police." *State v. Schultz*, Lake App. No. 2003–L–156, 2005-Ohio-345, 2005 WL 238153, ¶ 29; *State v. Lather*, 171 Ohio App.3d 708, 2007-Ohio-2399, 872 N.E.2d 991, ¶ 3. When the court calls a witness on its own motion, a party need not satisfy the surprise and affirmative-damage requirements of Evid.R. 607(A) in order to impeach the witness. *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 514 N.E.2d 394.

By authorizing the court to call a witness who may then be cross-examined by any party, Evid.R. 614 creates an exception to the limitation imposed by Evid.R. 607(A), barring a party's impeachment of its own witness with evidence of a prior inconsistent statement. However, "where impeachment is a mere subterfuge to get evidence before the jury which is not otherwise admissible, impeachment of a party's own witness has been held improper." 53 A.L.R.Fed. at 500–501. The fact that evidence offered for impeachment would otherwise be inadmissible does not necessarily portray a subterfuge, however. When the reason a party relies on for requesting the court to call a witness as a court's witness, rather than calling him as a witness itself, is to avoid being unable to test the credibility of the testimony the witness is expected to give by use of his prior out-of-court statements, the request is not improper. *State v. Adams*, 62

Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144; *State v. Dacons* (1982), 5 Ohio App.3d 112, 5 OBR 227, 449 N.E.2d 507.

Courts have held that a court witness's prior inconsistent statements may be used only to diminish the credibility of the witness and otherwise impeach his testimony and may not be used as substantive evidence. *McCloud v. State* (Fla.App.1978), 354 So.2d 407; *People v. Bailey* (1975), 60 Ill.2d 37, 322 N.E.2d 804. Further, the witness may be impeached by prior inconsistent statements only if his testimony was damaging to the examiner's case. *People v. Triplett* (1980), 87 Ill.App.3d 763, 42 Ill.Dec. 786, 409 N.E.2d 401.

These limitations on the application of a rule like Evid.R. 614 reflect a concern that its cross-examination provision not swallow up the fundamental requirement imposed by Evid.R. 402 that in order to be admissible, evidence of a court's witness must be relevant; that is, the evidence must have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. *Arnold*, 189 Ohio App.3d 507, 2010-Ohio-5379, 939 N.E.2d 218, at ¶ 44-47.

**{¶ 52}** In the case before us, Wynn wanted Turner to testify as a court's witness so that Wynn could cross-examine Turner and admit statements in Turner's video interview through impeachment. Having the ability to test a witness's credibility with a prior inconsistent statement is not an improper reason to request the court to call a witness under Evid.R. 614(A). In fact, Wynn's trial counsel stressed that it was necessary to impeach Turner in order "to get to

the truth in the case," because counsel maintained that Tuner's video interview on January 21, 2011, was "consistent with the truth." Transcript of Trial Proceedings, Vol. IV, p. 642, ln. 16-17; p. 643, ln. 8.

{¶ 53}  As was noted, the trial court indicated that it might reconsider its decision not to call Turner as a court's witness. Wynn's counsel continued to maintain throughout the examination that Turner should be called by the court. *Id.* at pp. 742 and 745. In this regard, the following exchange occurred:

> THE COURT: Well, the whole thing is, does it matter with regard to how many stories he's told? The question is, is whether they were under oath. I think that's part of the impeachment. And you know, he doesn't have to tell the truth any other place. They can – he can tell – where is the law that requires you to tell the truth to the police?
>
> * * *
>
> Or to tell the truth in a story?
>
> MR. CICERO:      And that would be the jury's function to determine when the truth was told. Whether the truth was more recent to the event, or whether the truth came out later. That is the jury's function. And I'm trying to give it to the jury. *Id.* at p. 745, ln. 13-24.

{¶ 54}  We noted earlier that trial courts have discretion to call witnesses as court's witnesses under Evid.R. 614, where doing so could "be beneficial to the jury in performing its fact-finding responsibilities." *Adams*, 62 Ohio St.2d at 158, 404 N.E.2d 144. In *Adams*, the defendant argued that when a prosecution witness was called as a court's witness, the prosecution

"gained two significant procedural advantages: (1) it gained the right to impeach [the witness], and (2) it avoided the application during its examination of [the witness] of the rule prohibiting it from asking leading questions of its own witness." *Id*. at 157.

{¶ 55} After examining the record, the Supreme Court of Ohio concluded in *Adams* that the trial court did not abuse its discretion by calling the state's witness as a court's witness. In this regard, the court stressed that:

"(I)n modern criminal trials, defendants (as well as prosecutors) are rarely able to select their witnesses: they must take them where they find them." *Chambers v. Mississippi* (1973), 410 U.S. 284, 296, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297. The court, at the time it was faced with the prosecution's request, had in addition to the prosecutor's representation of prior conflicting statements, information that the appellee had lived as a partner in the potential witness' household (indicating a possible predisposition towards the appellee), but also that the witness was a codefendant awaiting trial and willing to testify at her former household partner's trial for the same crime of which she was accused (suggesting a possible motivation to testify against the appellee). *Adams* at 158.

{¶ 56} " 'Abuse of discretion' has been described as including a ruling that lacks a 'sound reasoning process.' " *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A review under the abuse-of-discretion standard is a deferential review. It is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same

conclusion or is, itself, less persuaded by the trial court's reasoning process than by the countervailing arguments." *Id.*

**{¶ 57}**    In our opinion, the issue in the case before us is a close one. We would not necessarily have reached the same conclusion as the trial court did. In particular, we see no harm that would have occurred if both sides were permitted to cross-examine and potentially impeach Turner. Nonetheless, even if the trial court had abused its discretion in failing to call Turner as a court's witness, any error would have been harmless, because the defense was, in fact, permitted to impeach Turner with his prior inconsistent statements, and the defense was also able to present sufficient facts from Turner's video interview to support its theory of the case.

**{¶ 58}**    Accordingly, there is no basis for reversing the decision not to call Turner as a court's witness under Evid.R. 614(A).

### B.    Did the Trial Court Exclude Relevant Evidence

### Regarding Wynn's Mental State?

**{¶ 59}**    In this argument, Wynn claims that the trial court ruled on various evidentiary issues in a manner that disregarded the mental state needed for a conviction of complicity to commit felony murder. Specifically, Wynn claims that the trial court erred in refusing to admit evidence of Wynn's and Turner's lack of a plan before they entered the convenience store. According to Wynn, this ruling eliminated the necessary mens rea for complicity. Wynn also argues that the trial court erred in concluding that evidence about Wynn's lack of knowledge of Turner's gun was irrelevant. Wynn argues that this evidence is relevant, and that its exclusion violated his right to mount a defense against the State's accusations.

{¶ 60}   A defendant's right to " 'a meaningful opportunity to present a complete defense.' " * * * " 'would be an empty one if the State were permitted to exclude competent, reliable evidence * * * when such evidence is central to the defendant's claim of innocence.' " (Citations omitted.)  *Swann*, 119 Ohio St.3d 552, 2008-Ohio-4837, 895 N.E.2d 821, at ¶ 12*, quoting *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). However, "this constitutional right is not absolute and does not require the admission of *all* evidence favorable to the defendant." (Emphasis sic.)  (Citation omitted.)  *Id*. at ¶ 13.  " 'In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' "  *Id*. at ¶ 14, quoting *Chambers,* 410 U.S. at 302, 93 S.Ct. 1038, 35 L.Ed.2d 297.

{¶ 61}   The Ohio Rules of Evidence provide that relevant evidence is admissible, whereas irrelevant evidence is not.  Evid.R. 402.  Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Evid.R. 401. "The issue of whether testimony is relevant or irrelevant, confusing or misleading, is best decided by the trial judge who is in a significantly better position to analyze the impact of the evidence on the jury."  *City of Columbus v. Taylor*, 39 Ohio St. 3d 162, 164, 529 N.E.2d 1382 (1988).

{¶ 62}   " '[T]he trial court has broad discretion in the admission and exclusion of evidence' " and an appellate court will not reverse the judgment of the trial court " 'unless it clearly abused its discretion and the defendant has been materially prejudiced thereby * * *.' " *State v. Withers*, 44 Ohio St.2d 53, 55, 337 N.E.2d 780 (1975), quoting *State v. Hymore*, 9 Ohio

St.2d 122, 128, 224 N.E.2d 126 (1967). "There is no material prejudice if the error is harmless, in that the remaining evidence standing alone constitutes proof beyond a reasonable doubt of defendant's guilt." *State v. Welburn*, 9th Dist. Lorain No. 93CA005551, 1993 WL 488408, *3 (Nov. 17, 1993), citing *State v. Williams,* 6 Ohio St.3d 281, 452 N.E.2d 1323 (1983), paragraph six of the syllabus.

{¶ 63} In order to decide whether the trial court abused its discretion in this case, we look to the elements of Wynn's offense. Wynn was charged with complicity to commit murder in violation of R.C. 2903.02(B), which provides that "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." The applicable underlying offense of violence in this case is a felonious assault, committed in violation of R.C. 2903.11(A)(2), which provides that:

> (A) No person shall knowingly do either of the following:
>
> * * *
>
> (2) Cause or attempt to cause physical harm to another or to another's
>
> unborn by means of a deadly weapon or dangerous ordnance.

{¶ 64} Thus, the culpability required for the commission of felony murder with a predicate offense of felonious assault is "knowingly." Wynn was not charged as the principal offender, but was charged with having aided and abetted the principal offender. In this regard, R.C. 2923.03(A)(2) states that "No person acting with the kind of culpability required for the commission of an offense shall do any of the following: * * * (2) Aid or abet another in committing the offense * * *."

**{¶ 65}** The State, therefore, was required to prove that Wynn knowingly aided or abetted George Turner in committing a felonious assault that proximately caused Beans' death. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

**{¶ 66}** "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus. "[T]he mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor." *Id.* at 243, citing *State v. Widner*, 69 Ohio St.2d 267, 269, 431 N.E.2d 1025 (1982). However, " '[p]articipation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.' " *Johnson* at 245, quoting *State v. Pruett*, 28 Ohio App.2d 29, 34, 273 N.E.2d 884 (4th Dist.1971).

**{¶ 67}** In the case before us, relevant evidence would be evidence tending to make it more or less probable that Wynn knowingly supported, assisted, encouraged, cooperated with, advised, or incited Turner in the commission of felony murder. The State did not have to demonstrate that Wynn and Turner had a plan to shoot Beans in order to convict Wynn of complicity, but evidence of the absence of a plan would tend to make it less probable that Wynn knowingly aided and abetted Turner. Accordingly, the trial court erred in concluding that

evidence regarding the lack of a plan was irrelevant.

{¶ 68} However, the court did, in fact, permit evidence of the absence of a plan. Specifically, Wynn was allowed to solicit testimony from Turner indicating that Turner did not intend to harm or to smack Beans when he entered the store. Turner also admitted to previously telling the police that he only intended to talk to Beans. Because these facts supported Wynn's defense, Wynn was not prejudiced by the trial court's ruling.

{¶ 69} In addition, evidence purporting to show that Wynn did not know that Turner had a gun could also be relevant to whether Wynn knowingly aided and abetted Turner. However, our review of the video interview, which was proffered as Defense Exhibit A, indicates that Turner never told the police that Wynn was unaware that he (Turner) had a gun. In fact, Turner said during the video interview that he took his gun out of the car when the two men pulled up to the store and went inside. Turner also stated that he took his gun out of the car because he knew that Beans kept a gun. And finally, Turner indicated that he kept his gun on the side and that it was out (meaning it would have been visible to others, including Wynn). This testimony would not have assisted Wynn in proving his lack of knowledge that Turner had a gun.

{¶ 70} Based on the preceding discussion, Wynn's First Assignment of Error is without merit and is overruled.


III. Second Assignment of Error

{¶ 71} Wynn's Second Assignment of Error is as follows:

The Trial Court Erred to the Prejudice of the Appellant When It Permitted

Into Evidence Mr. Wynn's Purported Letter in Violation of the Rules of Evidence and in Violation of the Defendant's Due Process Rights Guaranteed under the Fifth and Fourteenth Amendment of the United States Constitution and Article I, Section 16 of the Ohio Constitution.

**{¶ 72}** Under this assignment of error, Wynn argues that the trial court erred in admitting a letter into evidence that was: (1) not properly authenticated; (2) untimely disclosed to the defense; and (3) without a clear chain of custody. Wynn claims that the trial court's error prejudiced him and violated his constitutional right to due process. The letter was damaging to Wynn, because it contained an offer to essentially pay Turner not to cooperate with the police.

**{¶ 73}** "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court * * *." (Citation omitted). *State v. Haines*, 112 Ohio St.3d 393, 2006-Ohio-6711, 860 N.E.2d 91, ¶ 50. Although the trial court concluded that Wynn's alleged letter was properly authenticated, the court did not admit the letter into evidence. Instead, the court only allowed the jury to hear testimony about the letter. Since the trial court failed to admit the letter into evidence, Wynn's claim of error in the letter's admission is without merit. Furthermore, even if the trial court had admitted the letter, Wynn's arguments fail for several reasons.

1. The Letter Was Properly Authenticated.

**{¶ 74}** "A condition precedent to the admissibility of documents is that documents must be authenticated or identified." (Citations omitted.) *In Re Adoption of H.M.F.,* 2d Dist. Montgomery No. 22805, 2009-Ohio-1947, ¶ 26. Authentication or identification "is satisfied by

evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). "The evidence necessary to support a finding that the document is what a party claims it to be has a very low threshold, which is less demanding than the preponderance of the evidence." (Citations omitted.) *In Re H.M.F.* at *¶ 26.* Conclusive proof of authenticity is not required. *State v. Wheeler*, 2d Dist. Montgomery No. 12290, 1993 WL 265133, *2 (July 16, 1993), citing *State v. Easter*, 75 Ohio App.3d 22, 25, 598 N.E.2d 845 (4th Dist.1991). Instead, this low threshold requires " 'only sufficient foundational evidence for the trier of fact to conclude that the document * * * is what its proponent claims it to be.' " *Id.*

{¶ 75} Evid.R. 901(B) provides several examples of authentication or identification that conform with the rule, including "[d]istinctive characteristics and the like." Evid.R. 901(B)(4). This subsection of the rule explains that "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with the circumstances" conform with the authentication requirement. *Id.* For example, " 'a letter may be authenticated by evidence of its distinctive contents such as facts contained in the missive that only the writer may know.' " *State v. Brown*, 151 Ohio App.3d 36, 2002-Ohio-5207, 783 N.E.2d 539, ¶ 39 (7th Dist.), quoting *State v. Chamberlain*, 8th Dist. Cuyahoga No. 58949, 1991 WL 144181, *4 (July 25, 1991). (Other citation omitted.)

{¶ 76} In the case before us, the letter to Turner was unsigned, but Turner claimed that he knew the letter was from Wynn, based on its distinctive contents. Specifically, Turner testified that the letter's greeting, "What's up brother," was the way that he and Wynn had greeted each other since they were eight years old. He also indicated that the letter referred to "Nicky," which was the name of Wynn's girlfriend. In addition, the letter referred to the offense

involved in the case, and stated that the writer had led the police to Turner's wrong address after his arrest. Only Wynn would know this information.

**{¶ 77}** Turner also testified that the letter had been hand-delivered to him in jail by Wynn's cell mate. The content of the letter and the circumstances under which it was delivered, therefore, show a sufficient foundation for attributing authorship to Wynn. Accordingly, the letter was properly authenticated.

2. The Timing of the Letter's Disclosure Was Not Either Willful or Prejudicial.

**{¶ 78}** Crim.R. 16(B)(1) requires the prosecution to disclose any written or recorded statements by a defendant or a co-defendant that the State possesses or that are reasonably available to the State. All parties also have a continuing duty to disclose additional materials they may discover prior to trial. Evid.R. 16(A). "The failure to disclose [such] materials constitutes a violation of Crim.R. 16." *State v. Dotson*, 2d Dist. Clark No. 97-CA-0071, 1997 WL 822694, *6 (Nov. 21, 1997).

**{¶ 79}** "[A] trial court has discretion in determining a sanction for a discovery violation." (Citation omitted.) *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 33. In exercising its discretion, the trial court should consider: "(1) whether the failure to disclose was a willful violation of Crim.R. 16, (2) whether foreknowledge of the undisclosed material would have benefitted the accused in the preparation of a defense, and (3) whether the accused was prejudiced." *Id*. at ¶ 35, citing *State v. Parson*, 6 Ohio St.3d 442, 453 N.E.2d 689 (1983), syllabus.

**{¶ 80}** According to the record, the State disclosed the letter to Wynn the same day that

it was received by the State. The record, thus, indicates that the State did not act willfully in failing to earlier disclose the letter. *See State v. Summerall*, 10th Dist. Franklin No. 03AP-1024, 2004-Ohio-6599, ¶ 36 (concluding that the State's failure to timely disclose photographs was not a willful violation of the discovery rules, because the prosecutor immediately turned them over to the defense upon learning that they were available).

**{¶ 81}** The record also does not reveal that the late disclosure prejudiced Wynn. Wynn claims that he was prejudiced because he had little or no opportunity to prepare an adequate defense with respect to the letter. However, after the defense received the letter on February 2, 2012, it had three full days to prepare before trial started on February 6, 2012. The State also did not use the letter at trial until February 9, 2012. As a result, defense counsel knew about the letter for almost a week before it became necessary to address it at trial. Even if we were to decide that this amount of time was insufficient to prepare an adequate defense, Wynn has not shown that the trial result would have differed if he had received earlier notice. As was noted, the letter was properly authenticated, and Wynn was free to argue that Turner and the letter were not believable. Therefore, Wynn's argument that the late disclosure prejudiced him has no merit.

### 3. The State Was Not Required to Establish Chain of Custody.

**{¶ 82}** " 'A chain of custody is part of the authentication and identification mandate set forth in [Evid.R. 901], and the state has the burden of establishing the chain of custody of a specific piece of evidence before it can be admitted at trial.' " *State v. Ayers*, 2d Dist. Montgomery No. 25563, 2013-Ohio-5337, ¶ 10, quoting *State v. Rodriguez*, 6th Dist. Wood No.

WD-05-026, 2006-Ohio-2121, ¶ 16. However, this "duty is not absolute." *Id*., citing *Rodriguez* at ¶ 17. "A chain is needed only when an item is by nature fungible and indistinguishable, having no unique characteristics, like a pill." *State v. Wiley*, 2d Dist. Darke No. 2011-CA-8, 2012-Ohio-512, ¶ 12, citing *State v. Gunner*, 6th Dist. Lucas No. L-06-1385, 2008-Ohio-1857, ¶ 16.

{¶ 83} A chain of custody is established for such an item so that it can be shown that the item is authentic and has not " 'been tampered with or altered from its original form.' " *Wiley* at ¶ 12, citing *State v. Bowling*, 8th Dist. Cuyahoga No. 93052, 2010-Ohio-3595, ¶ 32. "This may be accomplished through direct testimony or by inference." *Gunner* at ¶ 17, citing *State v. Conely*, 32 Ohio App.2d 54, 60, 288 N.E.2d 296 (3d Dist. 1971).

{¶ 84} The handwritten letter in this case is not by nature fungible, nor is it indistinguishable from other similar objects. The letter has distinctive content and attributes; therefore, it is not the kind of evidence that requires the State to establish a chain of custody. However, Turner did testify about the letter's chain of custody. Turner claimed that the letter had been delivered to him in jail by Wynn's cell mate, and that he gave the letter to his defense attorney thereafter. The record also indicates that Turner's attorney disclosed the letter to the State. After reviewing the letter on the stand, Turner identified the letter as the one he had received in jail, and there is nothing in the record about the letter's condition to indicate that it had been tampered with or had been altered from its original form. Accordingly, Wynn's chain of custody argument is without merit.

{¶ 85} Based on the preceding discussion, Wynn's Second Assignment of Error is overruled.

IV.   Third Assignment of Error

**{¶ 86}**   Wynn's Third Assignment of Error is as follows:

Appellant Received Ineffective Assistance of Counsel From his Trial Attorney.

**{¶ 87}**   Under this assignment of error, Wynn argues that his trial counsel was ineffective in failing to discuss the letter with him prior to trial.   Wynn also argues that his counsel was ineffective because he failed to request a trial continuance after receiving late notice of the letter.   Wynn contends that a continuance would have allowed counsel to better prepare a defense against the claim that Wynn was the author of the letter.

**{¶ 88}**   We review alleged instances of ineffective assistance of trial counsel under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).   Pursuant to these cases, in order to reverse a conviction based on ineffective assistance of counsel, a defendant first "must show that counsel's representation fell below an objective standard of reasonableness."   *Strickland* at 688.   Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.* at 694. Furthermore, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the

circumstances, the challenged action 'might be considered sound trial strategy.' " *Id*. at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

{¶ 89}    In order to assess this issue, we begin with Wynn's claim that defense counsel failed to discuss the letter with him prior to trial.   Even if we were to decide that counsel's conduct fell below an objective standard of reasonableness, Wynn has not demonstrated that the result of the trial would have been any different had his counsel discussed the letter with him. Nothing in the record indicates that Wynn had information about the letter that would have changed counsel's defense strategy.   Furthermore, discussing the letter with Wynn would not have altered the fact that a substantial amount of evidence, both video and testimonial, supported the conviction.

{¶ 90}    The second claim of alleged ineffective performance pertains to trial counsel's failure to request a trial continuance.   As with other trial matters, the decision whether to request a trial continuance is debatable, and involves a strategic choice of counsel that falls "within the realm of trial strategy and tactics that will not ordinarily be disturbed on appeal."   *State v. Warner*, 8th Dist. Cuyahoga No. 95750,   2012-Ohio-256, ¶ 11, citing *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, and *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263.   "Debatable trial tactics generally do not constitute a deprivation of effective counsel."   *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995), citing *State v. Clayton*, 62 Ohio St.2d 45, 49,   402 N.E.2d 1189 (1980).

{¶ 91}    If Wynn's counsel believed that he needed a continuance, he could have requested one before the start of trial.   We will not second-guess counsel's trial strategy, but conclude, instead, that counsel had reasons for not requesting a continuance.   The record also

reveals that Wynn's counsel appeared sufficiently prepared to proceed, as he presented multiple arguments for the letter's exclusion, and the letter was, in fact, excluded. Finally, Wynn does not indicate how the trial result would differ if counsel had asked for, and had received, a continuance.

{¶ 92} For the foregoing reasons, Wynn's Third Assignment of Error is overruled.

## V. Fourth Assignment of Error

{¶ 93} Wynn's Fourth Assignment of Error states as follows:

The Trial Court Erred When It Allowed a Juror to Serve at the Trial When It Had Inappropriate Contact During the Trial with a State's Detective.

{¶ 94} Under this assignment of error, Wynn argues that the trial court should have further investigated a situation in which a juror had an outside communication with a detective while using a public restroom in the court building. A trial witness was also present in the restroom with the detective.

{¶ 95} "When a trial court learns of an improper outside communication with a juror, it must hold a hearing to determine whether the communication biased the juror." (Citations omitted.) *Phillips*, 74 Ohio St.3d at 88, 656 N.E.2d 643. "[T]rial courts are granted broad discretion in dealing with the contact and determining whether to declare a mistrial or to replace an affected juror." (Citations omitted.) *Id.* at 89. "A trial court is permitted to rely on a juror's testimony in determining that juror's impartiality." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 191, citing *State v. Herring*, 94 Ohio St.3d 246, 259, 762 N.E.2d 940 (2002).

{¶ 96}     In *McKnight*, the trial court questioned a juror in chambers after the prosecution reported that the juror had allegedly been engaging in improper outside communications about the case.  *Id*. at ¶ 189.   The juror explained himself during questioning, and afterward,  defense counsel stated that he was satisfied with the juror's explanation.   Defense counsel also indicated that no further inquiry into the allegation was needed.   *Id*. at ¶ 189-190.   Under these circumstances, the Supreme Court of Ohio held that the trial court did not abuse its discretion in failing to take further action on the matter.   *Id*. at ¶ 192.

{¶ 97}     The present case is analogous to *McKnight*.   Here, after learning of the outside communication, the trial court questioned the juror in chambers with counsel present.   During questioning, the juror indicated that he had made "small talk" with the detective, but that it had nothing to do with the case.   Transcript of Proceedings, Vol. III, p. 468, ln. 7-8.   The juror also indicated that he was unaware that the other gentleman in the restroom was a witness.   *Id.* at p. 468, ln. 2-6.   Both the State and defense counsel stated that they were satisfied with the juror's explanation, and the trial resumed.   Because the trial court questioned the juror to the satisfaction of both counsel, the trial court did not abuse its discretion by failing to further investigate the matter.

{¶ 98}     Wynn's Fourth Assignment of Error is overruled.


VI.   Fifth Assignment of Error

{¶ 99}     Wynn's Fifth Assignment of Error is as follows:

The Trial Court Erred to the Prejudice of the Appellant When It Did Not

Add to the Jury Instruction the Charge of Involuntary Manslaughter.

**{¶ 100}** Under this assignment of error, Wynn argues that the trial court abused its discretion in refusing to instruct the jury on involuntary manslaughter, with an underlying offense of misdemeanor assault, as a lesser-included offense of complicity to commit felony murder, with the underlying offense of felonious assault.

**{¶ 101}** "The question of whether a particular offense should be submitted to the finder of fact as a lesser included offense involves a two-tiered analysis." (Citation omitted.) *State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, 989 N.E.2d 986, ¶ 6. "The first tier, also called the 'statutory-elements step,' is a purely legal question, wherein we determine whether one offense is generally a lesser included offense of the charged offense." *Id.*, citing *State v. Kidder*, 32 Ohio St.3d 279, 281, 513 N.E.2d 311 (1987).

**{¶ 102}** "The second tier looks to the evidence in a particular case and determines whether ' " a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense." ' " *Id.,* quoting *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, ¶ 13. "[A] charge on the lesser offense is required 'only where the evidence presented at trial would reasonably support both an acquittal of the crime charged and a conviction upon the lesser included offense.' " *State v. Trimble,* 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 192, quoting *State v. Thomas,* 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus.

**{¶ 103}** "The trial court must view the evidence in the light most favorable to the defendant when deciding whether to instruct the jury on a lesser included offense." *Trimble* at ¶ 192, citing *State v. Campbell,* 69 Ohio St.3d 38, 47-48, 630 N.E.2d 339 (1994). "The lesser-included-offense instruction is not warranted every time 'some evidence' is presented to

support the lesser offense." *Id.,* quoting *State v. Shane*, 63 Ohio St.3d 630, 632, 590 N.E.2d 272 (1992). "Rather, a court must find 'sufficient evidence' to 'allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense.' (Emphasis sic.)" *Id*., quoting *Shane* at 632–633.

{¶ 104} In the case before us, the State concedes that involuntary manslaughter is a lesser-included offense of felony murder. *See* State's Brief, p. 24, citing *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, ¶ 79. Therefore, the first tier is satisfied, and we need not consider it further. *Accord State v. Miller*, 2d Dist. Montgomery No. 25504, 2013-Ohio-5621, ¶ 26.

{¶ 105} Concerning the second tier, we must decide whether the jury could reasonably find Wynn not guilty of complicity to commit murder, but guilty of complicity to commit involuntary manslaughter. Wynn argues that the proof in this situation would be that Wynn aided Turner by committing assault, which is a misdemeanor. In contrast, the State makes two arguments: (1) that the witnesses' frame-by-frame description of Wynn's active participation with Turner in every aspect of the assault, other than the pulling of the trigger, eliminates any idea that Wynn was unaware that Turner had brought a gun to what was supposed to be a simple assault; and (2) if the defense theory were true, the misdemeanor assault that Wynn says he committed is entirely independent of the felonious assault that Turner committed, and did not contribute to Beans' death.

{¶ 106} We agree with the State. R.C. 2903.04 (B), which contains the elements of involuntary manslaughter, states that:

No person shall cause the death of another or the unlawful termination of

another's pregnancy as a proximate result of the offender's committing or attempting to commit a misdemeanor of any degree, a regulatory offense, or a minor misdemeanor other than a violation of any section contained in Title XLV of the Revised Code that is a minor misdemeanor and other than a violation of an ordinance of a municipal corporation that, regardless of the penalty set by ordinance for the violation, is substantially equivalent to any section contained in Title XLV of the Revised Code that is a minor misdemeanor.

{¶ 107} As was previously noted, no evidence was presented at trial (or was found in Turner's video interview), indicating that Wynn was unaware that Turner had a gun. Moreover, the evidence that was presented would not permit a jury to reasonably reject the greater offense of complicity to commit felony murder. Instead, the evidence demonstrates that Wynn knowingly aided and abetted Turner in the murder. The video shows Wynn stepping in to punch Beans after Turner already had trained his gun on Beans. Turner was also struggling to get the gun away from Beans when Wynn punched Beans for the second time. Accordingly, the video, combined with the testimony in this case, indicates that Wynn knowingly assisted Turner in committing the felonious assault that proximately resulted in Beans' death.

{¶ 108} Even if one accepts the theory that Wynn asserts, Wynn's actions in assaulting Turner twice had no connection with the felonious assault with the gun, and did not proximately result in Beans' death. There is no evidence that Wynn's two-punch assault proximately caused Beans' death. If the jury believed Wynn's defense, it would have acquitted Wynn of complicity to murder Beans; it would not have found Wynn guilty of involuntary manslaughter. A jury instruction on involuntary manslaughter, therefore, would not be

appropriate, because Beans died as a proximate result of being shot by Turner, rather than from Wynn's two-punch assault.

{¶ 109}     Because the trial court did not err in failing to include involuntary manslaughter as a lesser-included offense, the Fifth Assignment of Error is overruled.

## VII.   Conclusion

{¶ 110}     All of Antonio L. Wynn's five assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and HALL, J.,   concur.

Copies mailed to:

Mathias H. Heck
Carley J. Ingram
Enrique G. Rivera-Cerezo
Antonio L. Wynn
Hon. Frances E. McGee